ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# Courts of Appeals

AT THE

MARCH TERM, 1910.

*(Continued from Volume 147)*

NATIONAL BANK OF COMMERCE IN ST. LOUIS, Appellant, v. MECHANICS' AMERICAN NATIONAL BANK and ST. LOUIS BREWING ASSOCIATION, Respondents.

St. Louis Court of Appeals. Argued and Submitted March 14, 1910. Opinion Filed April 5, 1910.

1. **BILLS AND NOTES:** Negotiable Instrument Law: Time of Taking Effect. The General Assembly which enacted the "Negotiable Instrument Law" (Acts 1905, p. 243), having adjourned March 18, 1905, and the act containing no emergency clause, and its operation not being postponed beyond the constitutional ninety days, it became effective June 16, 1905.

2. ———: ———: Payment is "Acceptance." The payment of a check or bill of exchange by the drawee is equivalent to its "acceptance," under section 188 of the Negotiable Instrument Law, which provides that "where the holder of a check procures it to be accepted or certified, the drawer and all endorsers are discharged from liability thereon."

3. ———: ———: **Payment of Forged Check: No Right of Recovery Against Endorser.** Under sections 62, 185 and 188 of the "Negotiable Instrument Law," a drawee who pays to a bona fide holder of a check, to which the drawer's name has been forged, the amount of the same, cannot recover such amount from the holder, the latter not being bound to determine at his peril that the drawer's signature was forged and the genuineness of that signature being vouched for by the drawee when it cashed the check.

4. ———: ———: **Payment of Check.** The endorsement and presentation of a check by the holder and its payment by the drawee do not constitute a negotiation of the check, but constitute a payment.

5. ———: **Payment of Forged Check: Banks: Clearing House Rules.** Under a clearing house rule, providing that all checks received at the clearing house, and not returned to the clearing bank on the same day before 2 o'clock, shall be deemed to have been paid with like effect as though they had been paid in currency at that hour by the bank on which they were cleared, a bank which did not return within the required time a check presented by another bank for payment was chargeable with the consequences of disregarding the rule, and could not recover the amount paid thereon, though the check was forged and the payee bank was not injured by the delay.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

AFFIRMED.

*Geo. L. Edwards* and *Edward D'Arcy* for appellant.

(1) The rule that a drawee is presumed to know the signature of his drawer, and that if he pays money on a forged check, to a bona fide holder, he cannot recover it, does not apply to a case where the holder has himself been negligent in taking the check, and has thereby led the drawee to relax his vigilance. Ellis & Morton v. Insurance & Trust Co., 4 Oh. St. 628; Bank v. Bangs, 106 Mass. 441; Bank v. Ricker, 71 Ill. 439; Goddard v. Bank, 4 N. Y. 147; Bank v. Bank, 151 Mass. 280; Bank v. Salem, 17 Mass. 33; Rouvant v. Bank,

63 Tex. 610; Bank v. Bank, 4 Ind. App. 355; Bank v. Saving & Trust Co., 2 Dill (U. S.) 11. (2) The mere fact that plaintiff cannot show conclusively that the names of the payees of the checks in suit are names of fictitious persons, will not defeat recovery, the evidence being that these payees were not employees of the car company, and are unknown persons, and that no such checks were ever issued by the car company. Bank v. Bank, 151 Mass. 280. (3) Where a bank endorses a check drawn on another bank and which it has received from a customer, "for collection," and forwards it to the drawee bank for payment, it does not thereby assert the genuineness of the instrument, but where the indorsement is general, it does assert such genuineness, and the drawee is entitled to rely on such assertion. Bank v. Bank, 107 Mo. 402; Bank v. Bank, 40 Ill. App. 640; Ford v. Bank, 10 L. R. A. (N. S.) 63 (74 S. Car. 180); Bank v. Bank, 4 Ind. App. 355; Bank v. Bangs, 106 Mass. 441; Bank v. Bank, 45 Tex. 203; Turnbull v. Bowyer, 40 N. Y. 456; Fuller v. Smith, 1 Car. & P. 197, Ryan & M. 49. (4) Unless the drawee's mistake as to the signature of the drawer has caused the holder some loss, the drawee should not be held absolutely to a knowledge of his correspondent's signature. Morse Banks & Banking, p. 834 (4 Ed.); McKleroy v. Bank, 14 La. An. 458; Bank v. Bank, 4 Ind. App. 355 (defendant's indorsement tended to throw plaintiff off guard, but defendant was not negligent); Chitty on Bills, 485; Bank v. Bank, 108 N. W. (N. Dak.); 10 L. R. A. (N. S.) 49. (5) There is no presumption that the defendants have been injured by the length of time which elapsed between the payment of the checks on August 15th, and the notification of the forgery on September 11th or 12th. If any injury resulted to defendants by reason of this delay, the burden is upon them to prove it. McKeen v. Bank, 74 Mo. App. 281; Wind v. Bank, 39 Mo. App. 72; Investment Co. v. Bank, 96 Mo. App. 125; Koontz v. Bank, 51 Mo. 275; United

States v. Bank, 141 Fed. 209; Daniel Neg. Inst., sec. 1372, n. 18, citing Bank v. Allen, 59 Mo. 310; Bank v. Bangs, 106 Mass. 441. (6) If a check is paid through the clearing house and the drawee discovers it has no funds, it may return the check, even after the hour set by the clearing house rules, if the payee bank has not lost its rights by the delay, or altered its position. Bank v. Bank, 101 Mass. 281; Bank v. Bangs, 106 Mass. 441; Bank v. Bank, 139 Mass. 513. If such recovery be allowed in case of mistake as to sufficiency of funds, much more should be allowed in case of forged paper, etc. Morse on Banks and Banking, sec. 464, p. 827. (7) Even where the bank and its customer agree upon a time, say, ten days, within which checks must be returned, this is not necessarily conclusive. McKeen v. Bank, 74 Mo. App. 281. The two o'clock clearing house rule was treated as immaterial in Bank v. Bank, 107 Mo. 409. (8) The law presumes "that those engaged in a given trade or business are acquainted with the general customs and usages of the business, where it is carried on, and with such other facts as are necessarily incident to the proper conduct of the business." Jones, Ev., sec. 51, n. 1., citing Young v. Turing, 2 Man. & G. 593-603; Hinckle v. Kersting, 21 Ill. 247; 74 Am. Dec. 102; McAllister v. Raib, 4 Wend. 483; Mills v. Bank, 11 Wheat. 431; Sutton v. Tatham, 10 Adol. & Ell. 27; Given v. Charron, 15 Md. 502; Pittsburg v. O'Neil, 1 Pa. St. 342; Rindskoff v. Barrett, 14 Ia. 101. (9) Parties to commercial paper are bound by general customs, such as the custom among drawee banks to rely upon the vigilance of prior parties in identifying people. "It is a great error to suppose that the drawee of a bill or check is bound to rely alone upon a knowledge of the handwriting of his customer or correspondent." Ellis v. Ins. & Trust Co., 4 Oh. St. Rep. 628.

*Johnson, Houts, Marlatt & Hawes* for respondents.

(1) The appellant as the depository of the St. Louis Car Company was bound to know its depositor's signature, and cannot recover from bona fide holders for value the amount of forged checks paid to them. Price v. Neal, 3 Burrows 1355; Bank v. Bank, 107 Mo. 402; Stout v. Benoist, 59 Mo. 281; Bank v. Bank, 107 Iowa 329; Bank v. Bangs, 106 Mass. 444; Bank v. Bank, 177 Mass. 392; Bank v. Boutell, 60 Minn. 191.  (2) The application of this rule of law to the facts in this case necessitates affirmance of the judgment in favor of the German American Bank and Bremen Bank.  (3) The same rule requires an affirmance of the judgment in favor of the Gast Brewing Company.  (a) There is no evidence of negligence on the part of the Gast Brewing Company in cashing the checks in controversy or any checks of the car company.  (b) The active, positive negligence and carelessness of the appellant and its employees was the sole and only cause of the appellant's loss.  (c) The endorsements in this case were restrictive and in no sense gave currency to the checks or induced relaxation of vigilance on the part of the appellant. Bank v. Bank, 109 Mo. App. 665; Bank v. Bangs, 106 Mass. 444; Bank v. Bank, 107 Mo. 402.  (4) The rule in Price v. Neal, is independent of and does not rest upon any change in condition or prejudice to the position of the party cashing the check, by reason of the failure of the drawee to detect the forgery. Bank v. Bank, 107 Mo. 402; Neal v. Coburn, 92 Me. 149.  (5) There was no proof that the names of the payees in the checks in controversy were forged. But if they were, the loss to the appellant did not result from that, but from the forgery of the maker's name. Bank v. Bank, 107 Iowa 330.

*Geo. R. Lockwood* for respondent bank.

(1)   A bank is bound to know the signature of its customer to checks drawn on it and it must bear the loss of a forgery on it in the name of its customer, unless there is some cogent reason for shifting the loss to another, and the drawee bank must assume the burden of showing such reason.   This is as favorable a statement of the law in this case as will be found in any of the decisions of this State and is fully sustained by the following cases, which establish the rule in this State.   McKeen v. Bank, 74 Mo. App. 281; Invest. Co. v. Bank, 96 Mo. App. 125; Invest Co. v. Bank, 103 Mo. App. 613; Bank v. Bank, 107 Mo. 402.   (2)   The following cases either affirm the rule as just stated, or declare, unequivocally, and without qualification, the doctrine that drawee bank must know the signature of its customer and that such has been the law since 1762. Bank v. Bank, 177 Mass: 392; Neal v. Coburn, 92 Mo. 139; Bank v. Bank, 59 Oh. St. 207; Bank v. United States, 151 N. R. 402; Cooke v. United States, 91 U. S. 389 (396); 7 Century Digest, Bills and Notes, secs. 1272-3; Bank v. Bank, 115 Tenn. 64; Bank v. Bank, 30 Md. 11.   (3)   The checks being payable to fictitious persons, were payable to bearer at the common law which obtained in this State in August, 1905, at the time of the payment of the checks in question.   Story, Promissory Notes, sec. 132.   Furthermore, the alleged forgeries of the payees' names were not the cause, either proximate or remote, of the injury or loss complained of, and therefore there can be no recovery in this action because of such alleged forgeries.

*Edw. C. Kehr* for respondent, St. Louis Brewing Association.

(1)   The bank is bound to know the signature of its depositor.   In paying a check, it acts at its peril and pays out its own funds.   Stout v. Benoist, 39 Mo. 277;

Bank v. Bank, 107 Mo. 402; McKeen v. Bank, 74 Mo. App. 281; Inv. Co. v. Bank, 96 Mo. App. 125; Inv. Co. v. Bank, 103 Mo. App. 613; Bank v. Bank, 109 Mo. App. 672; Bank v. Bank, 177 Mass. 392. (2) At the time appellant paid the checks it had in its possession the evidence that they were forgeries. (3) The checks were indorsed by the payees therein named and thus indorsed, were sold and delivered to the respondent, brewing association, the latter paying full value for them. The indorsement of the respondents on the checks was solely for the purpose of collection as appellant well knew.

STATEMENT.—The petition upon which this case was tried as well as the other case hereinafter referred to, the latter differing from this only in the names of the defendants and in the number of checks and in the amount, consists of two counts. By the first count it is charged that on or about the 15th of August the defendants presented to plaintiff for payment fourteen certain pretended checks, each 'dated the 12th day of August, 1905, for various amounts, aggregating the sum of $549.25, each purporting to have been drawn on plaintiff by the St. Louis Car Company, to have been signed by said company by its president and its assistant secretary, and each purporting to be endorsed by the payee therein, each of which was endorsed by the defendants or by others and then by the defendants; that defendants represented to plaintiff that the checks were the genuine checks of the St. Louis Car Company, as they purported to be, and requested plaintiff to pay the same; that when the checks were purchased or otherwise acquired by the defendants "they negligently made no inquiry and took no action whatever to ascertain whether or not said checks were in fact the genuine checks of the St. Louis Car Company as they purported to be;" that they were endorsed by the defendants and presented to plaintiff for payment through the clearing

house of the city of St. Louis, all being presented together, and that believing the representation of the defendants that the checks were the genuine checks of the car company and such appearing to be the case from such inspection of the checks as plaintiff was able to make under the circumstances and at the time they were presented for payment by the defendant bank and not knowing otherwise but relying upon the genuine endorsements thereon of the defendants, which also led plaintiffs to believe them genuine, plaintiff paid them to the defendant, the Mechanics American National Bank; that all of the checks were forgeries and not the genuine checks of the St. Louis Car Company, as represented by the defendants and as they purported to be, and were wholly worthless and valueless to the plaintiff; that the fact that the checks were forgeries was not discovered either by plaintiff or by any other person until on or about the 11th or 12th of September, 1905, and that immediately upon discovering that the checks were forgeries, plaintiff notified defendants of the fact and demanded refund of the amount of money paid which defendants failed and neglected and refused to do. It is further averred that the position of the defendants was not altered or changed and that the defendants had sustained no damage as the result of plaintiff's paying the checks to the defendant Mechanics American National Bank as requested by defendant at the time it notified defendants that the checks were forged and demanded a refund of the money, wherefore judgment is demanded for the amount of the checks, $549.25, with interest and costs. The second count is practically the same with the exception that it states that each of the checks purported to be endorsed by the payee therein and each of them was endorsed by the defendant St. Louis Brewing Association and by others and that the defendant represented to plaintiff that the checks were the genuine checks of the Car Company and that each of the checks was endorsed by the genuine signature of the

payee named therein as endorser thereof as is purported to be; "that when said checks were purchased or otherwise acquired, by the defendants, they negligently made no inquiry and took no action whatever, to ascertain whether or not said checks were, in fact, the genuine checks of the St. Louis Car Company, as they purported to be, or whether the aforsaid endorsements thereon, were the genuine endorsements of the parties whose names appeared thereon;" and it is averred that the endorsements of the payees and other parties thereon as endorsers thereon "are not the genuine signatures of said payees, as represented by the defendants, and as they purport to be, and all are wholly worthless and valueless to the plaintiff." The other allegations are practically as in the first count of the petition.

The answer of the defendant bank admits the incorporation of the various parties, avers that the defendants believed the checks to be genuine and valid and that they had been duly endorsed by the payees named therein as payees and so believing deposited the checks to the credit of the defendant bank on current account; that they did this in good faith and in the belief that the checks were the checks of the Car Company and duly endorsed by the payees therein named and that in due course they presented the checks to the plaintiff bank for payment, through the clearing house association, in the usual and customary manner of collecting checks between banks in the city of St. Louis; that they were examined by the employees of the plaintiff and held by them to be the genuine checks of the Car Company and defendant's account was credited with the aggregate amount of the checks; that the plaintiff and defendant were at the time of the presentation of the checks members of the Clearing House Association of the city of St. Louis, and the rule of the Clearing House Association hereafter referred to is set up, it being averred that the plaintiff did not return defendant the checks on or before two o'clock of the day on which

they were presented to plaintiff for payment through the Clearing House Association and did not inform defendant that the checks were as plaintiff alleges forgeries and not genuine checks of the Car Company or endorsed by the payees thereof until on or about the 11th or 12th of September, 1905, which defendant says was the first and only information that it had that the checks were not the genuine checks of the Car Company or endorsed by the payees thereof; denies making any representations as to the genuineness of the signatures; denies knowledge and information as to whether they were forgeries and denies negligence. The answer to the second count is practically the same, with the denial of any knowledge or information as to the forgery of the names of the endorsers.

The answer of the Brewing Association was a general denial except as to admissions of corporate capacity and that the Car Company was a depositor and customer of the plaintiff and engaged with plaintiff in the business usual and customary between banker and depositor.

Demurrers to the petition were interposed which were overruled. The reply was a general denial. Trial was had before the court, a jury being waived, this case being tried in the lower court and submitted and argued before us in connection with another case in which the National Bank of Commerce in St. Louis is plaintiff and appellant, and the German American Bank, the Bremen Bank and the Gast Brewing Company are defendants and respondents. As the facts which underlie the transactions involved are identical in the two cases, change of parties and of names only and of the number of checks distinguishing one from the other, the statement which we make for brevity and convenience as well as an intelligent understanding of the matter will cover the facts in both cases. With some changes we are following the statement of counsel for one of the respondents, as to the facts in evidence at the trial.

The works of the St. Louis Car Company are located in the extreme northern end of St. Louis and at a distance of at least seven or eight miles from the Bank of Commerce. At the time in question, the Car Company employed several thousand men, whose wages it paid twice a month in checks drawn on the appellant. Every other Saturday, after working hours, and therefore, after banking hours was pay-day. These checks were not presented to the bank by the individuals to whom they were issued, but being indorsed in the name of the payee, they were cashed by the grocers and saloon keepers in the neighborhood and the brewery salesman, who, on such occasions, appeared at the place of business of their customers. In cashing these checks, the workmen were arranged in line, and as each man presented his check it was examined, and if found to be endorsed in the name of the payee, it was cashed. The men presenting these checks wore the clothes and had the appearance of men who had just come from their work at the shops. No particular identification of any one man, as payee, was had or attempted, the presence of the men in the line of workmen and in the garb of the other workmen and no question being made by others in the line or present as to their being part of the working force being accepted as sufficient identification. On the 12th day of August, 1905, the St. Louis Brewing Association cashed a number of Car Company checks presented in this way; among them were 14 checks, seven or eight of which were bought direct by the brewery, the remainder being sent in by its customer, Daubendieck, in payment of his account. The brewery paid the full face value of these checks without any knowledge or suspicion that the signature of the Car Company was forged or that the party named as payee in the check was not its rightful owner.

Each of these fourteen checks is endorsed in the name of the payee therein named and the endorsee received its face value for it. The Brewing Association

having thus acquired these checks, deposited them with its co-defendant, the Mechanics American National Bank and the latter presented them, through the clearing house, to the appellant for payment. The endorsement on the checks by the respondents will be stated later.

Forty-two checks in all, alleged to be forgeries (fourteen in this case and twenty-eight in the other) were presented to the appellant for payment by the clearing house on Tuesday, August 15, 1905, twenty-eight of them being those involved in the other case. They were taken to the Bank of Commerce in one or more bunches or bundles, and there came under the observation of an assistant cashier, or his assistant, of the bookkeeper and of the paying teller of the bank. There seemed to these officers to be an irregularity in the signature of Mr. Phelps, the assistant secretary of the Car Company. The signature looked suspicious to them. Each of the four bank officers examined it, but made no examination beyond that. They did not open the bundles, did not examine the quality of the paper, nor the workmanship of the checks, did not examine the wood cut of a car on the end of the check nor the numbers upon the checks. In the bundles containing the spurious checks were several hundred genuine checks. Upon the witness stand the assistant cashier unhesitatingly pronounced the forty-two checks to be forgeries. As he produced each check, he pronounced the signature of the Car Company to be a forgery. He said: "There are only three numbers on these forty-two forged checks, that is, they are all B98360, 98530 or 98630, so that in the forty-two checks these numbers are repeated 8 or 10 times."

The Clearing House rule prevailing in the Clearing House in St. Louis, of which association all of the banks involved are members was pleaded in the answers and put in evidence. That rule is as follows:

"All checks or other items received at the Clearing House and which shall not be returned to the clearing bank or trust company on the same day before two

o'clock, shall be deemed to have peen paid with like effect as though such check or other item had been paid in currency at that hour over the counter by the bank or trust company on which it was cleared; and therefore the responsibility of the bank or trust company through which said item is passed, shall cease as completely as though said check or item had been in fact paid out in currency over the counter by the bank or trust company on which it was cleared. On half-holiday Saturdays the time for returning the items shall not be later than eleven o'clock a. m. on the same day."

The evidence in the case further shows that there is a custom in the city of St. Louis among the banks requiring every person cashing a check to identify the holder of it as the person named in it, and that in cashing clearing house items, as these checks are called, the drawee bank relies largely upon endorsements and no difference is shown between Clearing House endorsements and other unrestricted endorsements. The statement as to what took place at the appellant bank as set out by counsel for appellant is as follows:

When the forged checks in question came to the appellant, though the Clearing House, on the morning of August 15, 1905, they were, together with a large number of genuine checks of the Car Company, and of other depositors, examined by the assistant cashier and his assistant. These examiners noticed an irregularity about some of the signatures of the name of W. B. Phelps on the checks, and called the attention of the paying teller to them. He concluded, after examining them, that they were all right, remarking that men's signatures are likely to vary in signing large numbers of checks.

Taking by way of illustration a check drawn on the plaintiff bank reading, "Pay to the order of W. Clarke," and purporting to be signed by the Car Company, it was endorsed, "W. Clarke. Pay to the order of Mechanics-American National Bank. Hyde Park Brewery, C. Mar-

quard Forster, Mgr. St. Louis Clearing House. Aug. 15, 1905. Mechanics American National Bank. 32. All prior endorsements guaranteed." This latter was stamped, the 32 being the clearing house number of the Mechanics American National Bank. In the case against the German American Bank et al., the endorsements following that of the named payee—which latter was in blank as in the other case—are "Gast Brewing Company. German American Bank. St. Louis Clearing House, August 15, 1905. 13. All prior endorsements guaranteed." In both cases this latter appears to have been the stamp of the Clearing House.

Going somewhat more fully into the manner in which the checks came into possession of the brewing companies, it appears that the Car Company pays off its employees twice a month. The agents of the brewery would take a certain amount of money, say twenty-eight to thirty thousand dollars and go to different saloons in the neighborhood of the Car Company plant and cash the checks for the Car Company's employees as they came in. There were hundreds of the employees, who would come in and be paid off one at a time as they came along. Each man would hand in his check. They were not known personally to the brewery agents—no questions asked as to who they were, simply compared the endorsement with the name on the face of the check— of course noting that the check was signed by the assistant treasurer of the Car Company and noting its general appearance. Did not know the signature of the payee and endorser and made no inquiry. This practice had been carried on for several years. The checks when cashed in the saloons were turned into the breweries. This was the testimony as to the Gast Brewing Company. Some of the checks apparently came to the breweries through their customers, without endorsement, however, by the latter, all of them having been taken up about as above described. There is no evidence in the case showing that the first endorsers of these checks

were not the persons whose names appeared therein as payees. All that appears as to that is that no such persons who are named as payees and who endorsed are or then were employees of the Car Company.

At the conclusion defendants interposed what were practically demurrers to the evidence, on the ground that plaintiff, under the law and the evidence, was not entitled to recover against the defendants. These were sustained. Judgment went accordingly in favor of the defendants. Plaintiff in due time filed its motions for new trial which being overruled and exceptions duly saved throughout, appeals were duly perfected to this court.

REYNOLDS, P. J. (after stating the facts).—By act of the General Assembly of this State, approved April 10, 1905, what is called "The Negotiable Instrument Law," was adopted in this State. See Sess. Acts, 1905, p. 243. The Forty-third General Assembly which adopted this Negotiable Instrument Law adjourned on the 18th day of March, 1905. There is no emergency clause in this act, nor, by any section or provision in it, is its operation postponed beyond the constitutional period of ninety days. Consequently it was in effect June 16, 1905. The checks in suit bear date August 12th and were cashed by the plaintiff bank August 15, 1905. That act, by section 196, provides that "in any case not provided for in this act, the rules of the law merchant shall govern." All acts in connection with these checks are, therefore, to be construed, and the character and rights of the parties to them are determinable under the provisions of this Negotiable Instrument Act of this State, provided they are such as are covered by it. We call attention to this for the reason that all of the counsel in the case seem to have lost sight of it, one of them even stating that at the time of the transaction the common law, meaning "Law Merchant,"

then obtained in this State and that that law is to be applied in the determination of the questions arising in this case. We do not think so; on the contrary, we think that this whole transaction falls within our Negotiable Instrument Law of 1905. Section 62 of that law treating of bills of exchange and promissory notes, reads: "The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance; and admits: (1) The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) the existence of the payee and his capacity to indorse." Section 185 of the same act provides that a check is a bill of exchange drawn on a bank payable on demand, and except as in the act otherwise provided, the provisions of the act applicable to a bill of exchange payable on demand apply to a check. Section 188 reads: "Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon." The payment of a check or bill of exchange by the bank upon which it is drawn is equivalent to its acceptance. In view of this law of our State, there is no necessity for an elaborate discussion of the questions which have grown out of transactions occurring prior to its adoption by our State. Two lines of decision, each line emanating from courts of the highest authority and most reputable standing for judicial learning, have followed through this class of cases. One line, tracing its origin to the decision of Lord Mansfield in the case of Price v. Neal, 3 Burr. 1354, holds without qualification to the rule that when the drawee of a check, to which the name of the drawer has been forged, pays it to a bona fide holder, he is bound by the act and cannot recover the payment. This on the rule that the drawee of a bill of exchange, check or draft is bound to know the handwriting of his customer, the drawer, and if he accepts or pays a bill check or draft in the hands of a bona fide holder for value, he is concluded by the act,

although it turns out that the signature of the drawer is a forgery, and having paid or accepted it, he can neither repudiate the acceptance nor recover the money paid. The other line, and because of comparatively late origin, or more accurately, announcement, sharply challenges this, and as said by an accepted authority on banks and banking in treating of it, 2 Morse (4 Ed.), sec. 464, "This doctrine is fast fading into the misty past where it belongs." The so-called modern rule is that one who purchases a check or draft is bound to satisfy himself that the paper is genuine and that by endorsing it or presenting it for payment or putting it into circulation before presentation, he impliedly asserts that he has performed this duty. Consequently it is held in this line of cases, that if it appears that he has neglected this duty the drawee, who is without actual negligence on his part and who has paid the forged paper, may recover the money paid from such negligent purchaser. The recovery is permitted in such cases sometimes on the ground that although the drawee was constructively negligent in failing to detect the forgery, yet if the purchaser had performed his duty the forgery would in all probability have been detected and the fraud defeated, and again on the ground that he has received money to which he is not entitled. As stated by the able counsel for appellant this modern rule does not always apply the rule of Price v. Neal to a case where the holder has himself been negligent in taking the check and has thereby led the drawee to relax his vigilance. One of the earliest cases so holding is that of the Gloucester Bank v. Salem Bank, 17 Mass. 32. Another is Ellis & Morton v. Ohio L. Ins. & T. Co., 4 Ohio St. 628. The cases illustrative of these two lines of decision are so fully compiled in 10 Lawyers' Reports, Annotated, New Series, p. 49 *et seq.*, in annotation of the case of First National Bank of Lisbon v. Bank of Wyndmere, 15 N. Dak. 299, which case follows the latter line of decisions, that

we can do no better than refer to that work for reference to the conflicting cases. It is to be noted that the so-called modern cases or what is a more proper denomination, the new rule cases, do not appear to notice the effect on the Price v. Neal rule of the Negotiable Instrument Law, although many of our states—thirty-five or more—have adopted it since it was drafted in 1895, practically in the form adopted by us. The courts following the new rule have frequently proceeded upon the idea that recovery could be had in case of payment of forged paper on the ground, to put it briefly, that it had been paid by mistake of fact, a rule denied in the cases which follow Price v. Neal. It is also to be remarked that the author of the notes to First National Bank of Lisbon v. Wyndmere, 10 L. R. A. (N. S.) 49, before referred to, does not notice the Negotiable Instrument Law, nor is it noticed in the annotated case although North Dakota appears to have adopted the law between 1897 and 1902. See Crawford Ann. Neg. Ins. Law (3 Ed.). The doctrine applicable in cases of negligence is also invoked in these new rule cases, that as between two innocent parties he through whose negligence the act first occurred is the one to suffer. Nearly the identical questions here involved have very lately been before the Springfield Court of Appeals, where under the title of National Bank of Rolla v. First National Bank of Salem, 141 Mo. App. 719, 125 S. W. 513, a very elaborate and learned discussion will be found. Judge GRAY, writing the opinion in that case, held, after an examination of the cases and in the light of our Negotiable Instrument Act, that where the payee bank pays a check to another bank, which is a bona fide holder, such drawee cannot recover the money back on discovering such check to be a forgery. The only material difference between that case and the cases now before us is that in the case before the Springfield Court of Appeals negligence was neither pleaded nor in issue. Here it is. Judge GRAY first disposing of the question on principle and on the authori-

ties, and independent of the statute, follows the rule in Price v. Neal. He further holds that in the adoption of our Negotiable Instrument Law, we have adopted the rule announced in Price v. Neal. The State of New York has adopted this same Negotiable Instrument Act and in the case of Title Guarantee and Trust Co. v. Haven, No. 2, 126 App. Div. (1908) 802, the Supreme Court of that state, in an opinion by Judge INGRAHAM, passing upon sections similar to the ones which we have quoted from our law, construes them as making it conclusive upon the drawee after acceptance that the note was genuine and the endorsements and all prior endorsements assured. That is to say, the Supreme Court of New York in this case recognizes that in the adoption of this Negotiable Instrument Act the State of New York had adopted to its fullest extent the rule announced in Price v. Neal, the court quoting from National Park Bank v. Ninth National Bank, 46 N. Y. 77, that "for more than a century it has been held and decided, without question, that it is incumbent upon the drawee of the bill, to be satisfied that the signature of the drawer is genuine; that he is presumed to know the handwriting of his correspondent; and if he accepts or pays a bill to which the drawer's name has been forged, he is bound by the act and can neither repudiate the acceptance nor recover the money paid." Quoted approvingly in Bank v. Bank, 107 Mo. 402, 17 S. W. 982. See also Bank v. Bank, 109 Mo. App. 665, 83 S. W. 537. Taking the same view of our Negotiable Instrument Law as that taken by the Springfield Court of Appeals in the National Bank of Rolla v. First National Bank of Salem case, and by the Supreme Court of New York in the case of Title Guarantee and Trust Co. v. Haven, No. 2, we hold that when our State adopted the Negotiable Instrument Law it adopted the rule announced in Price v. Neal. We are therefore not called upon to inquire into the soundness of that rule or whether modern decisions have overturned it. We are bound to it by force of our own statutory law.

This disposes of the main contention. But it is urged that negligence on the part of defendants has been proven, and that even the cases which follow Price v. Neal, recognize negligence on part of the holder as taking the case out of the rule. It is not necessary to discuss the proposition of law involved. The negligence here relied on is in the failure to identify the payees as the real parties named as such. But there is no probative evidence that they were not the very parties named in the checks as payees. The defendants' agents were not bound to determine at their peril that the signature of the drawer was forged. That, under our Negotiable Instrument Law and under Price v. Neal, is not negligence. The genuineness of that signature was vouched for by the plaintiff when it cashed the checks. Why should the fact that defendants passed it as genuine be imputed as negligence to them? It was so near the genuine that the officers of the plaintiff bank, the drawee, accepted and cashed the checks upon which it appeared as genuine. Nor do we think that endorsements and presentation of these checks to the plaintiff bank was in any sense a negotiation of them. They were presented to the drawee by the defendants for payment, not in the line of negotiation, and they were paid, not bought. Finally, we hold that the appellant bank, under rule 12 of the Clearing House, of which it and the defendant banks were members, and by which they are all bound, was chargeable with the consequences of a disregard of that rule. It is no answer to this to say or prove that no harm resulted to defendants by the delay. The rule makes no such exception. Nor is it an answer here to the charge of disregard of that rule to say that these checks came in in such great number and by one delivery that there was not time to examine and reject these forty-eight. This rule was made by men of long experience in banking, men of great banking acumen. There is no suggestion that it violated any law. It is not possible to believe that in the city of St. Louis, with its wonder-

ful banking business, it was an uncommon occurrence to have hundreds of checks turned in through the Clearing House at one and the same time. If out of their exeprience these bankers making their own law, did not think it wise to make an exception to the rule to meet such an event, it is fair to assume that they have concluded that it is not the part of wise and safe banking to make such an exception. As they have made none, we do not think the courts should undertake to do so.

On a careful consideration of the case we hold that under the facts in evidence before the learned trial court, the demurrers were properly sustained and judgment properly entered in favor of the defendants. That judgment is affirmed. All concur.

