EAST ST. LOUIS COTTON OIL COMPANY, a Corporation, Respondent, v. BANK OF STEELE, a Corporation, Appellant.

Springfield Court of Appeals, June 25, 1918.

1. **BANKS AND BANKING:** Payment of Forged Checks: Liability as to Depositor.  Where a bank, for ten cents on $100, honored checks of a corporation's branch manager, receiving credit daily by its correspondent in another city for checks so drawn, law of liability as between depositor and banker for payment of forged checks regulated liability of bank to corporation.

2. ———: ———: Liability: Statute.  Under Negotiable Instruments Law (Rev. St. 1909, Sec. 10032), a bank is prima-facie liable to its customer for moneys paid on·a forged check, and the customer need not charge negligence on the part of the bank.

3. ———: ———: Negligence of Customer.  A bank, sued by customer for moneys paid on forged check, may plead negligence of customer in defense.

4. ———: ———: Action: Instructions. In corporation's action against bank to recover moneys paid out on forged checks, parties standing in relation of banker and depositor, instruction as to corporation's

negligence being a defense, *held* all bank was entitled to, in view of facts and circumstances.

5. ———: ———: **Negligence.** To be defense to bank, which has paid forged check, negligence of customer should be proximate cause of forgery or payment, and not mere possible cause of forger's getting possession of blank check.

6. ———: **Forgeries of Checks: Negligence.** Where a bank's customer is directly connected with forgeries of checks paid by the bank, or his negligence is directly connected therewith, he cannot recover from the bank.

7. **TRIAL: Instructions: Neglect of Defense Not in Evidence.** In corporation's action against bank to recover payment on forged checks, parties standing in relation of banker and depositor, in view of absence of evidence tending to show negligence of corporation, giving its instructions, ignoring bank's defense of negligence contributing to forgeries, was not error.

8. **BANKS AND BANKING: Forgeries: Negligence.** Where St. Louis gin company had branch at Micola, and authorized manager to draw checks on nearby bank, checks being forwarded to correspondent in St. Louis that bank might be reimbursed, it was not negligence by ginning company, in relation to forgery of checks, not to inspect them when forwarded to St. Louis office.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

AFFIRMED.

*Jere S. Gossom* and *H. E. Doerner* for appellant.

*Ward & Reeves* for respondent.

BRADLEY, J.—Plaintiff brought suit to recover $864.32 being the amount of seven forged checks. The cause was tried before the court and a jury; plaintiff recovered, and defendant appealed.

Plaintiff, among other things, is engaged in buying, ginning and selling cotton. Its main office is in East St. Louis, and it has a branch office in Caruthersville, Mo., which is operated under the name of the Caruthersville Cotton Oil Company. Also plaintiff has gins at various places, and one at Micola, Mo., in Pemiscot county. Plaintiff made arrangements with defendant whereby defendant was to cash all checks

drawn by plaintiff's manager at Micola for matters pertaining to its business there. W. M. Barnes was plaintiff's manager at Micola, and his signature was furnished defendant. For this service defendant received ten cents on the one hundred dollars it paid out on checks so drawn. Plaintiff kept no deposit of consequence with defendant, although the checks were drawn as though plaintiff were a depositor. At the close of business each day defendant took plaintiff's checks that day paid, totaled them, and enclosed them in a sealed envelope, called a "draft envelope," and mailed to the Third National Bank, its correspondent in St. Louis. Upon the outside of the draft envelope was a blank draft. This the defendant filled out, designating the checks within, amount, etc., and when completed it was a draft drawn by defendant upon plaintiff for the amount of the checks within. Upon receipt of the draft envelope the Third National Bank gave defendant credit for the amount shown in the draft, and presented the draft to the Mechanics American National Bank of St. Louis, which paid it, and charged to the account of plaintiff. The draft envelope, containing the checks, was then mailed to plaintiff's main office in East St. Louis. From there it was mailed to the Caruthersville office where the account of the Micola gin was kept, and the draft envelope was there opened for the first time after it left defendant at Steele. When the draft envelope was opened at the Caruthersville office the forgeries were discovered, and defendant notified.

One of the forged checks was dated September 15, two September 16; two September 18; and two September 19th; all in 1916. All were cashed, just what date is not shown, by some of the banks in Caruthersville, but were paid by defendant on September 22, and 23rd. Just which ones were paid on the respective days does not appear. The checks in question and two others were cut out of the check book furnished Barnes in advance of where he was using, and he did not miss them until about September 26, at which time he called defendant by telephone, and advised it about the missing

checks, giving the numbers missing, and asked if any of them had showed up. Defendant examined its books, and advised Barnes that none of them had showed up; but in this defendant concedes that it was mistaken and that in making a hurried examination while Barnes was waiting for an answer, it overlooked the fact that it had cashed the checks some three or four days previous. It does not appear just what day plaintiff received the checks at its Caruthersville office, but it was subsequent to September 27, because on that day plaintiff from its Caruthersville office wrote defendant, advising it of the missing checks, giving it the same information that Barnes had on the day previous.

Plaintiff bottomed its petition upon the principle of law that a bank must know the signature of its customer, and set out the facts in form. The defendant filed demurrer based on the ground that plaintiff had pleaded no act of negligence on the part of defendant. Demurrer was overruled, and defendant answered by a general denial, and that plaintiff was precluded from recovery because of its negligence in permitting its check book to be exposed to the public at its scale house in Micola and that plaintiff's manager, Barnes, had carelessly signed checks in blank and had given orders for others to sign his name to checks drawn on defendant. There was no reply filed, but the case was tried as though a general denial had been filed as a reply, and no point is made in that respect. The plaintiff as stated, bottomed its case upon the principle of law that a bank must know the signature of its customer, or in other words plaintiff proceeded on the theory that the relation between bank and customer existed between plaintiff and defendant. Defendant contended that no such relation existed; but that defendant merely bought the checks in due course, and that plaintiff having honored its draft in payment for the checks, could not recover back; that plaintiff by its negligent conduct in leaving its check book at its scale house so exposed that it was the direct cause of the forgery.

Defendant (appellant) makes in substance three assignments of error: (1) That its demurrer to the petition should have been sustained; (2) that its peremptory instruction should have been given; (3) that the court erred in giving instructions for plaintiff and refusing instructions for defendant.

The attack upon the petition is grounded upon the absence therein of any charge of negligence on the part of the defendant in paying the checks. The law of liability upon the bank as between depositor and banker for the payment of forged checks we think is clearly applicable here. The defendant has cashed plaintiff's checks from its Micola gin the previous season and was thoroughly familiar with Barnes' signature and the manner of the business routine of the drafts drawn to reimburse it. Checks were drawn in the usual manner. Defendant was furnished with the signature of Barnes, and the only difference was in the manner of reimbursement. Had plaintiff had the necessary deposit account to take care of its checks, the difference would only have been in the manner of repayment or bookkeeping. In the regular way defendant would have charged the checks to plaintiff's account; in the way they pursued defendant drew daily, and received credit at its correspondent in St. Louis. From our conclusion as to the relation existing between plaintiff and defendant it follows that the case must be considered as though plaintiff was seeking to recover against defendant for charging to its account the amount of the forged checks. By the old rule so called in some of the books (2 Morse on Banks and Banking [5 Ed.], sec. 463) a banker is bound to know the handwriting of his customer; the drawee is bound to know the signature of his drawer. Having parted with his money because of his own culpable negligence he (the drawee) cannot be permitted to recover it back when he afterward discovers the error. This rule was first laid down in England in 1762 (Price v. Neal, 3 Burrows 1355), and has been followed in many jurisdictions, and in others criticised, modified, and in some

instances departed from and what is called the new rule has been invoked permitting the bank to recover of a holder to whom it has paid money upon a forged check, draft or bill of its customer. This new rule proceeds upon the theory that such payment is upon a mistake of fact, a rule denied in cases following Price v. Neal. [Bank v. Bank, 148 Mo. App. l. c. 18, 127 S. W. 429.]

A number of cases following the old rule, and the new are compiled in First National Bank of Lisbon v. Bank of Wyndmere, 10 L. R. A. (N. S.) (N. Dak.) 49, to which reference is made for authorities supporting the respective rules. But according to the interpretation of our Negotiable Instrument Law the rule for Missouri has been settled by statute. Section 62, Laws 1905, page 251, now section 10032, Revised Statutes 1909, of our Negotiable Instrument Laws is as follows: "The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance, and admits: (1) The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) the existence of the payee and his capacity to indorse." This court in an able opinion by Judge GRAY in National Bank of Rolla v. First National Bank of Salem, 141 Mo. App. 719, 125 S. W. 513, held that our Negotiable Instrument Act adopted the law as declared in Price v. Neal. In that case this court quoted approvingly from the Title Guarantee & Trust Company v. Haven, 111 N. Y. S. 305, wherein the construction of section 62 of the Negotiable Instrument Law was under consideration as follows: "A bank which pays a check purporting to be drawn on it by one of its depositors, guarantees the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and, where such signature is forged, cannot recover back the amount from the person to whom it was paid, although the position of the parties to such person has not changed in any respect."

In Missouri Lincoln Trust Company v. Third National Bank, 154 Mo. App. 89, 133 S. W. 357, following First National Bank of Rolla v. National Bank of Salem, supra, and National Bank of Commerce v. Mechanics American National Bank, 148 Mo. App. 1, 127 S. W. 429, this observation is made: "The law is well settled that a bank is conclusively presumed and bound to know the signature of its customer, when that signature appears as drawer on a check, drawn upon that bank, purporting to be signed by the customer."

McClendon v. Bank of Advance, 188 Mo. App. l. c. 426, 174 S. W. 203, refers to section 10032 as follows: "It is entirely true that the acceptor, by accepting the instrument—and a bank who pays the check of its customer is such—admits the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and the existence of the payee and his capacity to endorse." But in this case it is pointed out how an exception to the rule could be upheld as for instance in an action between the bank and the forger.

7 C. J. 683, states the rule between bank and customer thus: "A bank is bound to know the signatures of its customers: and if it pays a forged check, it must be considered as making the payment out of its own funds, and cannot ordinarily charge the amount so paid to the account of the depositor whose name was forged."

This text cites the following Missouri cases in support of this rule; Missouri-Lincoln Trust Co. v. Third National Bank, 154 Mo. App. 89, 133 S. W. 357; First National Bank of Rolla v. National Bank of Salem, supra; Union Biscuit Co. v. Springfield Grocer Co., 143 Mo. App. 300, 126 S. W. 996; Lieber v. St. Louis Fourth National Bank, 137 Mo. App. 158, 117 S. W. 672; Kenneth Inv. Co. v. National Bank of Republic, 103 Mo. App. 613, 77 S. W. 1002; Currey v. Joplin Savings Bank, 100 Mo. App. 532, 74 S. W. 1036; Kenneth Inv. Co. v. National Bank of Republic, 96 Mo. App. 125, 70 S. W. 173; J. M. Houston Grocery Com-

pany v. Farmers Bank, 71 Mo. App. 132; National Bank of Commerce v. Mechanics American National Bank, 142 Mo. App. 1, 127 S. W. 429.

We do not hold that in all circumstances a depositor or customer could recover from his bank where his forged check has been charged against his account; but we do hold that the bank is prima-facie liable, and that in such case it is not necessary to charge negligence on the part of the kank. Plaintiff in such case makes a prima-facie case by showing that the bank has paid a forged check of its customer, and negligence of the customer may be pleaded in defense, and if such facts and circumstances can be shown on the part of the customer which would tend to mislead the bank and throw it off guard, these would be proper matters to submit to the jury. This very thing was done in the case at bar, and the defendant was given this instruction: "The court instructs the jury that although you may find and believe from the evidence, in this case, that the checks mentioned in evidence are forged and bogus checks and that the defendant paid the same and collected the amount so paid on said checks from the plaintiff, and that plaintiff has suffered a loss thereby, yet, if you further find and believe from the evidence that such forgery and loss of plaintiff was the result of the negligent and careless acts and conduct of plaintiff, in that, plaintiff negligently and carelessly kept said checks in and about its office unguarded, unwatched and exposed to the public, or that plaintiff carelessly and negligently permitted and authorized persons other than their manager to fill out said blank checks and sign the name of their manager thereto, or that plaintiff negligently and carelessly suffered or permitted its gin manager at Micola to sign his name to blank checks and authorize others to fill out such blank checks and use them, and by reason of said careless and negligent acts and conduct said checks were forged and put into circulation, then plaintiff cannot recover and your verdict should be for the defendant."

This was all and more than the defendant was entitled to under the law, in view of the facts and circumstances in evidence. There is no evidence that manager Barnes had promiscuously signed checks in blank; and had promiscuously authorized others to fill them out or that he had authorized others to sign his name. Barnes at one time during his absence authorized one Mr. Michie the keeper of the store at Micola to fill out some checks signed in blank and the check book was left with Michie for that purpose. Michie filled out three such checks; but none of these were questioned or in question. Barnes left the check book with Michie by direction of his company, and Michie, who cashed many of the checks in the first instance, merely accommodated Barnes by looking after the buying and paying in Barnes' absence. The negligence of the defendant should have some connection with the forgery or the act of the bank in paying the check. In other words the negligence of the customer or drawer should be the proximate cause of the forgery or payment, and not the mere possible cause of the forger getting possession of the blank check. [Jordan Marsh Co. v. National Bank, 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250.] Where the customer is directly connected with the forgeries, or his negligence is directly connected therewith he cannot recover. [New York Produce Exchange Bank v. Houston, 169 Fed. 785; 95 C. C. A. 251; McClendon v. Bank of Advance, supra.]

This disposes of defendant's assignments based upon the court's action in overruling its demurrer to the petition, and in failing to give its peremptory instruction at the close of the whole case.

We are now brought to the consideration of defendant's assignment based upon given instructions requested by plaintiff, and refused instructions requested by defendant.

Defendant complains about instructions numbers one, three and four given at plaintiff's request which

are as follows: "Instruction No. 1: The court instructs the jury that if you find and believe from the evidence in this case that in September, 1916, the plaintiff was doing business with defendant bank of Steele, Missouri, and furnished said bank with the signature of its employee who issued checks and having authority to issue checks drawn by the plaintiff on said defendant bank, then and in that event the defendant is presumed to know the signature to the checks drawn upon its bank, and if it paid these forged checks, that is checks not signed by it or by any persons by it authorized, the loss will fall upon the defendant bank; and you are therefore instructed if you find and believe from the evidence in this case that the plaintiff at said time was doing business with said bank, the defendant was furnished with the signature of its employees having authority to issue checks and that the defendant cashed the checks in question here, alleged to be forged, and that said checks were not genuine checks of the plaintiff, but were forged checks; and if you further find that the defendant cashed said checks and that they were bogus or forged checks and not the checks of the plaintiff, and not drawn by any person by the plaintiff authorized and that the defendant thereupon collected the amount of said checks from the plaintiff by means of a draft testified to in this case, without the plaintiff or before plaintiff had seen the alleged checks, and that thereafter in due course under the system of doing business between the plaintiff and defendant, as soon as the checks reached plaintiff it notified the defendant that said checks were false and forged and demanded payment for the amount of said checks back from the defendant and the defendant refused same, then you will find the issues in this case for the plaintiff and against the defendant."

"Instruction No. 3: You are further instructed that if you find and believe from the evidence that the checks in question were not signed by the plaintiff, and

that the signature to the checks was forged and written without any authority and without the knowledge of the plaintiff; then the court instructs you that they were not the checks of the plaintiff, and the defendant had no authority to pay the same, provided you further find that the checks were drawn upon the defendant bank. Unless you find the facts to be as set out in another instruction.''

''Instruction No. 4: You are further instructed that where checks. were drawn upon a bank as the checks in question were drawn upon the defendant bank, and the bank cashed said checks, then such bank is bound to know the signature thereto and cashes the same at its peril, and if it afterwards turns out that said check is forged, false and bogus, then the loss falls upon said bank, unless the bank is relieved of this responsibility from some other cause as set out in other instructions given in this case.''

Number one is challenged because it ignores the defense, and three and four are challenged because the reference to other instructions is too vague and uncertain, and is calculated to confuse rather than to enlighten. If any evidence had been shown tending to connect plaintiff with the forgeries, or acts on the part of plaintiff which tended to mislead defendant, and throw it off guard, and divert it from that careful inspection which every bank owes its customer before it pays a check bearing his name, then defendant's challenge of the three instructions would be a matter for consideration. But here plaintiff was in no manner connected with the forgeries, and was guilty of no act by word or deed, which could have in any manner influenced or affected defendant in the payment of the checks. All plaintiff did was to leave its check book at its scale house presumably situate on its gin premises where the criminally inclined might get hold of it. If such a circumstance can be magnified into the importance of constituting a fact tending to connect plaintiff with the forgery, then practically every country gin,

merchant and farmer who keeps a bank account would be subject to dire consequences if some thief in his temporary absence picked up his book and tore out a check, and later forged his signature, and his bank honor the check. We do not think that the circumstances tending to show negligence on the part of plaintiff were such as to prove or tend to prove that character of negligence which the law requires to preclude a customer from recovering from his bank where the bank has charged his account with a forged check; hence there was no error in giving plaintiff's instructions.

Defendant asked an instruction to the effect that the relation between plaintiff and defendant was that of principal and agent, which was refused. What we have heretofore said about the relation between plaintig and defendant disposes of this assignment. Defendant asked and was given an instruction telling the jury that the plaintiff was bound to know the signature of its employee, Barnes, and it urges that plaintiff having voluntarily paid the draft drawn by defendant to repay it for the forged checks, after plaintiff knew or by the exercise of ordinary care might have known that the checks were forged, cannot thereafter recover. But it will be noted that plaintiff paid the draft before it knew of the forgery; and as soon as it learned thereof defendant was notified. We cannot say that it was lack of ordinary care not to inspect the checks in the St. Louis office. The Micola gin account was kept at Caruthersville nearby, where the agents in charge were expected to check up, and this under the business system between plaintiff and defendant was the proper place to make inspection. The Mechanics American National Bank in St. Louis paid defendant's draft by direction theretofore given. The draft envelope, as had been the manner of business conduct between plaintiff and defendant, was not opened from the time it left defendant until it arrived back at Caruthersville. Immediately upon opening the envelope

the forgeries were discovered, and defendant notified, and demand made for the return of the money in effect charged against plaintiff by defendant for the forged checks. Plaintiff's conduct in the matter was just what a prudent customer would do who had just received from his bank his canceled checks, and upon examination had discovered a forgery.

We find no error. The judgment was clearly for the right party and should, therefore, be affirmed, and it is so ordered. *Sturgis, P. J.,* and *Farrington, J.,* concur.