# MISSOURI LINCOLN TRUST COMPANY, Appellant, v. THIRD NATIONAL BANK OF ST. LOUIS, Respondent.

St. Louis Court of Appeals. Argued and Submitted December 6, 1910. Opinion Filed December 30, 1910.

1. **PLEADING: Demurrer: Matters Admitted by.** A demurrer admits only such facts as are well pleaded, and does not admit matters of law, conclusions of the pleader, nor immaterial facts.

2. **BANKS AND BANKING: Signature of Depositor on Check: Presumption: Bills and Notes.** A bank is conclusively presumed and bound to know the signature of a customer on a check drawn upon it, purporting to be signed by the customer.

3. **————: Signature of Depositor as Indorser: Presumption: Liability of Bank: Bills and Notes.** A bank is not chargeable with knowledge of the genuineness of the signature of a depositor appearing as indorser on a paper drawn by a third person on another bank and made payable to the depositor, and by accepting the paper in due course, it does not admit the genuineness of the indorsement.

4. **EVIDENCE: Presumptions.** The presumption of law is always in favor of right action, and a criminal act is a matter of proof, not of presumption.

5. **BANKS AND BANKING: Bills and Notes: Payment of Forged Draft: Action by Indorser for Repayment: Negligence of Drawer.** A check drawn on a bank in favor of a depositor of another bank was presented to the latter bank by a third person, purporting to have been indorsed by the depositor. The latter bank delivered to the third person a draft drawn on a Chicago bank, payable to the depositor, for a part of the check. The indorsement of the depositor on said draft was forged, and said draft was negotiated for value by the third person to another, and he, in turn, negotiated it to another, and the latter negotiated it for value to plaintiff bank, which collected it from the drawee. The drawee presented the draft to the drawer and received payment thereon. Afterwards, the drawer, discovering that the payee's indorsement had been forged, demanded and received payment of the amount of the draft from plaintiff bank, as an indorser. In an action by the latter against the drawer bank, to recover the amount of such payment, *held*, that the drawer bank was not guilty of actionable negligence in issuing and delivering the draft to the third person, nor in ac-

cepting, as paid, the draft from the Chicago bank, when the payee's indorsement was forged, and that it was not liable to plaintiff for the amount the latter had refunded as an indorser.

6. ———: ———: ———: Undue Delay in Demanding Payment: Estoppel. Where the indorsement of the payee on a draft is forged, and the draft, after being honored by the drawee, is presented by him to the drawer and paid by the latter, undue delay on his part, after discovering the forgery, might estop him from claiming restitution or repayment from an indorser; but, under the facts in decision, a delay of four months between the payment of the draft by the drawer and the demand by him on an indorser to refund its amount does not estop the drawer from claiming such restitution.

7. FRAUD AND DECEIT: Actionable Fraud. Deceit, to be actionable, must be as to some material matter.

8. BILLS AND NOTES: Payment of Forged Draft: Action by Indorser for Repayment: Fraud and Deceit: Banks and Banking. Where the payee's indorsement on a draft is forged, and the draft is negotiated for value to a bank, which indorses and collects it from the drawee, the fact that the latter delivered the draft to and received payment from the drawer does not affect the right of the drawer to recover from the indorser bank, since the latter was liable because it obtained payment from the drawee on a forged indorsement; and the fact that the drawer bank, which demanded and received payment from the indorser, concealed from the latter the fact that it had already settled with the drawee for the draft and had it in its possession did not amount to actionable deceit, entitling the indorser to maintain an action against it for the amount so refunded, on the ground of fraud.

9. ———: Indorsement for Collection: Guaranty of Payee's Signature. Although a draft is indorsed for collection only, the indorser warrants that the payee's indorsement is genuine.

10. MONEY HAD AND RECEIVED: Pleading: Sufficiency of Petition: Bills and Notes: Banks and Banking. A petition, in an action for money paid in refunding the amount of a draft, received in due course of business for value, which alleges the fact of the issuance of the draft, a forged indorsement and transfer to one who indorsed it and transferred it to plaintiff, who received it in due course for value, and which avers that defendant, compelling the refund, was guilty of negligence in originally issuing and delivering the draft to the person forging the indorsement, and that defendant had and received to plaintiff's use the amount of the draft refunded, does not state a cause of action for money had and received.

11. **PAYMENT: Involuntary Payment: Recovering Back.** An involuntary payment, made under compulsion or legal process or duress of goods or of person, may be recovered back, but one seeking to recover back money paid must show not only that the demand was illegal, but he must show duress.

12. **MONEY HAD AND RECEIVED: Payment: Involuntary Payment: Pleading: Bills and Notes: Banks and Banking.** An allegation in a pleading that a bank, issuing a draft, compelled one who had received it in due course of business for value to refund the amount thereof because of a forged indorsement is not an allegation that the refund was an involuntary payment under duress, and the money could not be recovered back on that account.

13. ————: **Action Lies, When.** Unless the proof shows payment under duress, by mistake of a material fact, or under imposition, express or implied, extortion or undue advantage, an action for money had and received will not lie.

14. ————: ————: ————: **Mistake of Law: Pleading: Bills and Notes: Banks and Banking.** Where a bank, issuing a draft, compelled one who received it in due course of business for value and who collected it from the drawee, to refund the amount thereof because the payee's indorsement was forged, and the drawer bank concealed the fact that it had paid the draft to the drawee and had it in his possession, the indorser could not recover the amount refunded on the ground of mistake in paying over the money to the drawer, since the mistake, if any, was one of law, the payment being made voluntarily.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

AFFIRMED.

*George B. Webster* for appellant.

(1) The first count of the plaintiff's petition states a good cause of action on the theory of the defendant's negligence which resulted in the plaintiff's loss. Negligence is the failure to observe for the precaution or safety of the interests of other persons, that degree of care, precaution and vigilance which the circumstances justly demand. Henry v. Railroad, 67 Fed. 426; Thompson, Com. Neg., sec. 1; Cooley, Torts (2 Ed.), p. 572; Wencker v. Railroad, 169 Mo. 592. Where one of two innocent persons must suffer for the fraud of a third person, he will be answerable for

the loss whose carelessness or negligence enabled that third person to perpetrate it, rather than the person who is guilty of no negligence. Bank v. O'Connell, 23 Mo. App. 165; Bank v. Wade, 73 Mo. App. 558; Smith v. Railroad, 74 Mo. App. 48; Bank v. Brown, 96 Va. 614; Bank v. Zeims, 93 Iowa 140; Dean v. Briggs, 137 N. Y. 274; Walsh v. Hunt, 120 Cal. 46; LeCoil v. Armstrong Co., 140 Ind. 256; Stebbins v. Walker, 46 Mich. 5. (2) The first count of the petition was also good as an action on the case in the nature of deceit. Banks v. Byers, 139 Mo. 627; Nat'l Bank of Rolla v. Bank, 125 S. W. 513; Cotrill v. Krum, 100 Mo. 389; Wells v. Adams, 88 Mo. App. 215; Matlock v. Reppey, 47 Ark 148; McAleer v. Horsey, 35 Md. 439; Franklin v. Holle, 7 Mo. App. 241; Gilmer v. Hands, 86 N. C. 317. If a statement is made of a matter susceptible of accurate knowledge and made in the form of a positive assertion calculated to convey the impression that it is true, when in fact it is not true, the representation is fraudulent. Bank v. Trust Co., 179 Mo. 648; Hamlin v. Abel, 120 Mo. 188; Walsh v. Morse, 80 Mo. 568; Chase v. Rusk, 90 Mo. App. 25; Macbeth v. Craddock, 28 Mo. App. 380; Caldwell v. Henry, 76 Mo. 254. (3) The petition states a good cause of action for money had and received to the plaintiff's use. Quarles v. Hall, 100 Mo. App. 523; York v. Bank, 105 Mo. App. 127; Moses v. Macferlan, 2 Burr. 1005; Campbell v. Kaufmann Mfg. Co., 127 Mo. App. 287; Dobson v. Winner, 26 Mo. App. 329; Richardson v. Drug Co., 92 Mo. App. 515; Gaines v. Miller, 111 U. S. 395; Hight v. Sanner, 71 Ill. App. 183; Bank v. Dismukes, 107 Ga. 212; Porter v. Roseman, 165 Ind. 255; Clark v. Bank, 57 Mo. App. 285; Lewis v. Sawyer, 44 Me. 332; Bank v. O'Connell, 23 Mo. App. 165; Bank v. Murdock, 62 Mo. 70; Bank v. Bank, 151 Mass. 280; Bank v. Brown, 96 Va. 614; LeCoil v. Armstrong Co., 140 Ind. 256; Burgess v. Gragaw, 49 Minn. 462; Pulliam v. Cantrel,

77 Ga. 563; Moody v. Bank, 19 Tex. Civ. App. 278; Stebbins v. Walker, 46 Mich. 5; Redmond v. N. Y., 125 N. Y. 632; Neal v. Coburn, 92 Me. 139. The plaintiff is not estopped in this case, because it had neither knowledge nor means at hand to discover them. Byers v. Jacobs, 164 Mo. 141; Blodgett v. Perry, 96 Mo. 263; Bayles v. Perry, 51 Mo. 449; Brandt v. Va. C. & I. Co., 93 U. S. 326; 2 Pomeroy Eq. Jur. (3 Ed.), sec. 810; Fehlig v. Busch, 165 Mo. 144; Gray v. Gray, 83 Mo. 106; Campbell v. Hoff, 129 Mo. 317; Holden v. Ins. Co., 46 N. Y. 1; Ins. Co. v. Martin, 13 Minn. 59.

*Fordyce, Holliday & White* for respondent.

(1) The demurrer to plaintiff's amended petition admitted only the facts in said petition which were well pleaded, and did not admit the matters of law or conclusions of law or of fact of the pleader therein set out. Bradley v. Franklin County, 65 Mo. 638; Blaine v. Geo. Knapp & Co., 140 Mo. 241; State ex rel. v. Aloe, 152 Mo. 466; Newton v. Newton, 162 Mo. 173; Hand v. St. Louis, 158 Mo. 204; Hogan v. St. Louis, 176 Mo. 149; Searcy v. Clay County, 176 Mo. 493; Gibson v. Railroad, 225 Mo. 473; Donovan v. Boeck, 217 Mo. 70; Mallinckrodt v. Nemnich, 169 Mo. 388. (2) The first count of the petition does not state facts sufficient to constitute a cause of action against defendant for negligence. Troth v. Norcross, 111 Mo. 630; Kelly v. Benas, 217 Mo. 9; Brewing Assn. v. Talbot, 141 Mo. 674; Rossi v. Bank, 71 Mo. App. 150; Zane on Banks and Banking, p. 266; Bank v. Bank, 91 N. Y. 74; Bank v. Bank, 152 Ills. 296; 29 Cyc., p. 501, and cases cited in note 14 on p. 502. (3) The first count of the petition does not state facts sufficient to constitute a cause of action against defendant for deceit. 20 Cyc., p. 13; Bank v. Byers, 139 Mo. 627; Live Stock Remedy Co. v. White, 90 Mo. App. 498; Edwards v.

Noel, 88 Mo. App. 434; Thompson v. Newell, 118 Mo. App. 405; Cement Co. v. Stewart, 103 Mo. App. 182; 2 Morse on Banks and Banking (4 Ed.), sec. 476; Ogden on Negotiable Instruments (1909), pp. 129, 169; Bank v. Bank, 152 Ill. 296. (4) The petition does not state facts sufficient to constitute a cause of action against defendant for money had and received to the plaintiff's use, since it appears from the petition that the payment made by the plaintiff to the defendant was voluntary. Buchanan v. Sahlin, 9 Mo. App. 552; 22 Am. and Eng. Ency. Law (2 Ed.), 625; Needles v. Burk, 81 Mo. 569; Hitchcock v. Crawford County, 200 Mo. 170; Savings Assn. v. Kehlor, 7 Mo. App. 158; State ex rel. v. Stonestreet, 92 Mo. App. 214; Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264; Wolf v. Marshall, 52 Mo. 167; Clowdis v. Railroad, 71 Mo. 510; Teasdale v. Stoller, 133 Mo. 645; Brewing Co. v. St. Louis, 187 Mo. 367.

REYNOLDS, P. J.—The amended petition in this case, as set out in the transcript before us, contains two counts or statements of the cause of action relied upon by plaintiff, both, however, relating to one and the same transaction, the grounds of recovery only differing. After averring the incorporation of the parties, for its first cause of action the plaintiff states that on and for a long time prior to September 8, 1906, one Parker was a depositor in and customer of the defendant; that on the 8th day of September, 1906, the St. Louis and San Francisco Railroad Company drew its check upon the State National Bank of St. Louis in favor of Parker, and that on the same day the check, purporting to be endorsed by Parker, was presented to the defendant, but that the endorsement thereon was in truth and in fact not the endorsement of Parker, nor any simulation of his signature, all of which the defendant then knew, or, by the exercise

of ordinary care and prudence, might have known; that nevertheless the defendant accepted the check, and in lieu thereof issued to the order of Parker its sight draft upon the Continental National Bank of Chicago, Illinois, dated September 8, 1906, whereby it ordered the Continental National Bank to pay to the order of Parker, the sum of six thousand dollars, and paid the balance of the check issued by the Railroad Company in cash or its equivalent; that thereupon the defendant delivered the draft for six thousand dollars to one Hand, and that afterwards, and upon the same day, Hand placed on the back of the draft an endorsement directing the payment of the same to one Hulbert, and signed the name of the payee, Parker, to this endorsement; that the signature of Parker so affixed was not his individual signature, nor any simulation or imitation thereof, nor so like the individual signature of Parker as to mislead any person of ordinary care and prudence; that thereafter, and upon the same day, Hand delivered the draft of six thousand dollars, for value received, and in the ordinary course of business, to Hulbert, who in turn endorsed and transferred the same, for value received, and in the due course of business, to one Schuermann, who thereupon transferred and delivered the same, for value received, and in the due course of business, to the plaintiff; that thereafter, on or about the 12th day of September, 1906, the plaintiff transferred and delivered the same for collection to the National Bank of Commerce, which collected the amount of the said draft from the Continental National Bank, which in turn presented the draft for payment to the defendant herein; that thereupon the defendant, notwithstanding the fact that it was bound to know the individual signature of Parker, and to inquire and examine as to the genuineness of the endorsement on the draft purporting to have been made by Parker as afore-

said, negligently and carelessly failed and omitted to make any inquiry or to notice the lack of similarity between the purported endorsement of Parker and his individual signature, but paid the draft, notwithstanding the fact that the purported endorsement of Parker was not so similar to his individual signature as to mislead any person of ordinary care and prudence; and that thereupon the liability of all the endorsers upon the draft to whom the plaintiff might otherwise have looked to compensate it for any loss which might be sustained by it through the false, fraudulent and fictitious endorsement first appearing upon the draft as aforesaid was terminated; that thereafter, about the 30th of January, 1907, the defendant called upon and compelled the plaintiff to refund to it through the Continental National Bank, the amount of the draft, without disclosing to the plaintiff the fact that it had theretofore paid the draft and so terminated the liability thereon of itself and all of the endorsers; that at the time of the demand of the defendant the draft was then in the possession of the defendant, but was not exhibited to the plaintiff, and the defendant gave out to and created upon the plaintiff, by its acts, statements and representations, the impression that the draft was still outstanding in the hands of the Continental National Bank, and that the Continental National Bank was demanding from and pressing upon the defendant for payment thereof; that the plaintiff in ignorance of the actual facts and without knowledge or means of acquiring knowledge of such facts as would have advised it that the same had been paid more than four months before, surrendered and paid over to the Continental National Bank for the account of the defendant herein, the sum of six thousand dollars which the Continental National Bank thereupon delivered to the defendant

That by reason of the negligence of the defendant in originally issuing and delivering the draft to a person other than Parker, and upon an endorsement other than his individual signature, and in subsequently paying the draft under the same conditions, and by reason of the failure and omission of the defendant to advise the plaintiff that it had paid the draft and so terminated the liability of all the parties thereto had cut off and forever removed any opportunity of the plaintiff to make itself whole for the loss occasioned by the defendant's negligence as aforesaid, the defendant became and is liable to the plaintiff in the sum of six thousand dollars for which it prays judgment, together with interest thereon at the rate of six per cent per annum from the date of instituting this action, and for its costs.

For its second cause of action, the plaintiff, after setting out the facts as before, avers that by reason of the matters and things stated, the defendant had and received to the plaintiff's use the sum of six thousand dollars, to which in justice and fairness it was not entitled and which it should not have taken or received from the plaintiff.

Wherefore, plaintiff prays judgment against the defendant for the sum of six thousand dollars together with interest thereon at the rate of six per cent per annum from the date of instituting this action and for its costs.

To each count of this amended petition a general demurrer was interposed, on the assigned cause that neither count stated a cause of action. The demurrers were sustained, and, plaintiff standing upon its petition, judgment followed, from which plaintiff has duly perfected its appeal to this court.

Counsel have submitted very elaborate arguments in support of their respective contentions, and the

learned counsel for appellant states in his argument that the case presents facts, the parallel of which are not to be found in any reported decision. While that may be true, the real points for decision are very simple and, as we think, thoroughly well settled.

The assignments of error relied on by counsel for appellant are, first, that the first count of the petition states a good cause of action on the theory that the negligence of defendant resulted in plaintiff's loss, in the consideration of which question counsel submits two propositions (a), was the defendant bound to detect the forgery when the original check of the St. Louis & San Francisco Railroad Co., bearing the spurious endorsement of Parker, its customer, was presented to it, and again when it received the draft also bearing the forged endorsement of Parker, returned by the Chicago bank? (b) Was the plaintiff's loss the proximate result of the defendant's failure to do so? Counsel argue for affirmative answers to all of these.

The second proposition is, that the first count of the petition was also good as an action on the case in the nature of deceit, the foundation for the claim of deceit being that defendant, having failed to disclose to plaintiff that the draft had been paid and the liability of all parties terminated, represented that the draft was still outstanding in the hands of the Chicago bank, and that plaintiff, in ignorance of these facts, and without any means of acquiring knowledge, had paid over to the defendant the amount of the Chicago draft.

The third proposition is, that the second count of the petition states a good cause of action for money had and received to the plaintiff's use, it being argued that under this second count, practically what is known under the old common law form of pleading as "common counts," the courts of law really administered equitable relief, to recover back money which, under

the circumstances of the case, ought not, in justice and good conscience, to be kept. As said by Lord MANS-FIELD, in Moses v. Macferlan, 2 Burr. 1005, quotes counsel, the action lies "only for money which, *ex aequo et bono*, the defendant ought to refund: . . . it lies for money paid by mistake; . . . or for money got through imposition (express, or implied); . . . or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances."

It is hardly necessary to say that a demurrer admits only such facts as are well pleaded, but does not admit matters of law nor conclusions that the pleader may draw on pleaded facts. Nor are immaterial facts considered in determining it.

For brevity, when we refer to the check of the St. Louis & San Francisco Railroad Company, drawn to order of Parker on the State National Bank of St. Louis, we designate it as "the check;" when referring to the draft drawn by defendant on the Continental National Bank of Chicago, Illinois, to the order of Parker, we designate it either as "the draft" or "the Chicago draft."

Taking up the first subdivision of the first assigned error, namely, that the defendant was bound to detect the forgery when the check of the St. Louis & San Francisco Railroad Company, bearing the spurious endorsement of Parker, its customer, was presented to it, and again when it received the draft, also bearing the forged endorsement of Parker, returned to it by the Chicago bank, because Parker was a depositor in its bank, it is to be observed that this argument has for its foundation the assumption, that because Parker was a depositor in the defendant bank, defendant was bound to know his signature, wherever it appeared, on any and all paper presented to it, and hence chargeable with knowledge that Parker's signa-

ture appearing as endorser on the check, was a for-. gery; further, that defendant was liable as for negligence in delivering to Hand the draft, also payable to the order of Parker. In considering this claim of negligence, it must be borne in mind that there is no averment in either count of the petition, that Hand, to whom the draft on the Chicago bank is alleged to have been delivered, was the person to whom the difference between the check and the draft was paid, or the one who either forged Parker's signature as endorser on the check or the one who presented the check with that forged endorsement to the defendant. All that is averred concerning Hand's connection with the matter is, that the Chicago draft was delivered to him. The law is well settled that a bank is conclusively presumed and bound to know the signature of its customer, when that signature appears as drawer on a check, drawn upon that bank, purporting to be signed by the customer. [See National Bank of Rolla v. First Nat. Bank of Salem, 141 Mo. App. 719, 125 S. W. 513; National Bank of Commerce v. Mechanics' Am. Nat. Bank, 148 Mo. App. 1, 127 S. W. 429, and authorities there cited.] We know of no rule or decision, however, that holds that a bank is chargeable with knowledge of the genuineness of the signature of its customer or depositor, appearing as endorser on the back of the check, or appearing anywhere on the paper, other than as drawer. The counsel for appellant, with all his learning and diligence, refers us to no authority supporting this. All the authorities we know of are to the contrary. Thus, in First National Bank of Chicago v. Northwestern National Bank of Chicago, 152 Ill. 296, it is said by the Supreme Court of Illinois (l. c. 306), that "the drawee of a bill of exchange or of a bank check is conclusively presumed to know the signature of the drawer, and if he accepts or pays, in the usual course of business, a bill or check whereon the signa-

ture of the drawer is a forgery, he will be estopped to afterward deny the genuineness of such signature.'' At page 307, it is said: ''The estoppel, however, of which we have spoken, applies only to the case of the signature of the drawer, and of the drawer alone. A drawee is bound to know the signatures of his own customers, and a bank is bound to know the signatures of those who deposit with it and draw checks against such deposits. But the drawee or bank is not chargeable with knowledge of any other signature on the bill of exchange or bank check, and by accepting or paying the bill or check does not admit the genuineness of any endorsement on it. . . . And even if a drawer draws a bill or a check payable to himself or his own order, and at once endorses it, an acceptance or payment of it by the drawee admits only the genuineness of the drawer's original signature, but not the genuineness of his endorsement.'' Many authorities, American and English, both from the courts and accepted text-writers, are cited by the court in support of this proposition, and we are referred to none to the contrary. This disposes of the first subdivision of the first assignment.

Under the second subdivision, counsel argue that it was negligence for defendant to deliver the draft, payable to Parker's order, to Hand. Admitting, for the sake of the argument, that defendant knew that Hand was the one who had forged Parker's name to the endorsement on the check which it cashed, drawn, be it remembered, not on it but on another bank, it is a far cry to say that it should have been put on notice that Hand would commit a second forgery by endorsing Parker's name on the draft to Parker's order on the Chicago bank, and which draft defendant delivered to Hand. We are unaware of any rule that requires one to presume, as a matter of law, that because a man has committed one forgery, he intends to commit a sec-

ond. It may have been, from anything to the contrary in the petition, that when Hand presented the check, or signed Parker's name, if he did either, he presented some authority from Parker that justified the defendant in cashing the check. The presumption of law is always in favor of right action; a criminal act is matter of proof, not of presumption. We are unable, therefore, to see that the facts set out in this first count tend to show any actionable negligence on the part of defendant in issuing the Chicago draft to the order of Parker and delivering the draft to Hand. Precisely the same rule applies to the act of defendant in accepting as paid its own draft on the Chicago bank. It is not pretended that when it did so, it knew, save as plaintiff claims it was bound to know, Parker's signature because he was a depositor, and this is all the knowledge the pleader claims it had of the forgery of Parker's endorsement on either paper. This we hold it was not bound to know from that fact. His name on the draft was as endorser; it came to defendant guaranteed by all endorsements subsequent to that of Parker's. Defendant had an undoubted right to protect itself behind these intermediate endorsements.

Learned counsel strenuously contend that in delivering the Chicago draft to Hand, defendant was guilty of carelessness and that as it was bound to assume that because Hand had forged Parker's endorsement on the check, that he would be liable to forge it on the draft, that the loss of the appellant in this case is directly attributable to this action of the defendant in turning over the draft to Hand; that the injury is directly attributable to defendant's carelessness; that in this general duty to foresee what might happen, the law, in its endeavor to do exact justice, draws into negligence cases the doctrine that where one of two innocent persons must suffer for the fraud of a third person, he will be answerable for the loss whose care-

lessness or negligence enabled that third person to perpetrate it, rather than the person on whom the fraud has been perpetrated, but who is guilty of no negligence. We have already noted the absence in either count of the petition, of any averment that Hand had forged Parker's name to the endorsement of the check, or that defendant knew that he had done so. This assertion of counsel rests in argument but is not covered by any averment in his petition. Moreover, if we consider the question of relative carelessness and measure that, it would seem clear that of all persons interested in ascertaining the genuineness of Parker's signature as endorser on the draft, appellant was the one. It was the one to respond if the signatures of its preceding endorsers were not genuine. If it chose to rely on its immediate or precedent endorsers, who by endorsement guaranteed the genuineness of Parker's signature, it assumed the chance of the financial responsibility of those endorsers, if Parker's signature was forged. The appellant was the party who of all others owed the duty to see that when it cashed the draft, and passed it along, endorsed by it, that the signatures of the prior endorsers upon it were genuine. Nor is there any pretense in this case, as an element of either negligence or deceit, that there was any undue delay on the part of the defendant in calling attention to the forgery of the signature of Parker on the draft. Undue delay on its part, after discovery of the forgery might have estopped the respondent from claiming restitution or repayment from the appellant, but undue delay is neither pleaded nor suggested. It is not presented by the fact that some four months seem to have elapsed between the cashing of the draft by appellant and the demand on it by respondent for refund. In Corn Exchange Bank v. Nassau Bank, hereinafter cited and quoted from, the delay was not considered unreason-

able, although the check there involved was paid on a forged endorsement made nearly two years before the drawers took any steps to recover from one through whose hands it had passed.

The second assignment, founded on the claim that this first count covers allegations sufficient to bring the case into one of deceit on the part of defendant, is even more untenable than the former position. Deceit, to be actionable, must be as to some material matter. The claimed deceit in this case is that defendant concealed from the plaintiff the fact, when it exacted repayment of the amount of the Chicago draft from it, that it had already paid the draft and had it in its possession. We are unable to see how this could possibly be concealment of a mater that at all affected the plaintiff. The presumption is that when the forgery was discovered, the draft then being in the hands of defendant, turned in by the Chicago bank, defendant paid its amount back to the Chicago bank. Defendant was then entitled to resort to the next responsible party, and that was plaintiff. Even if the defendant had told the plaintiff that it had itself taken up the Chicago draft and had paid it and had it in its possession, these facts would have been no defense to plaintiff as against repayment to either the Chicago bank or to respondent. It was liable by reason of the fact that it was the one who had obtained payment of the Chicago draft on a forged endorsement. It had money to which it was not entitled. The fact that if it had known the defendant bank had done what it was bound to do, that is, paid back to the Chicago bank the money with which it had been credited on account of this draft, could not in any way discharge the plaintiff from its obligation to make good, which it incurred when it endorsed the draft. It is not pretended, certainly not pleaded, that its endorsement was in any manner a limited endorsement. Even if endorsed merely for collection, it was

an endorsement which did not release plaintiff from the obligation assumed, namely, that the payee's endorsement is genuine. [Rossi v. National Bank of Commerce, 71 Mo. App. 150.] Plaintiff had its recourse against its precedent endorsers, Hulbert and Schuermann. Those were the parties to whom it had a right to look for repayment. Payment of the draft by defendant in no manner discharged them as against plaintiff. Plaintiff had no right whatever, as against the defendant, so far as the draft itself was concerned, save in case of failure of the Chicago bank to honor it. We are unable to see any deceit in connection with the matter, either founded on false representations or concealment, that led plaintiff into a false position or into doing something that it was not otherwise bound to do. We express no opinion as to the right of plaintiff to mingle in one and the same count, an action founded on negligence and one bottomed on deceit. That question is not before us.

Referring to the third assignment of error, which it will be observed relates to the second count of the petition, which is for money had and received, practically on the idea that defendant had received money of the plaintiff to which it was not entitled, and for support of which we are referred to the decision of Lord MANSFIELD, 2 Burrow heretofore noted, we are unable to discover any averments which bring it within the rule permitting recovery as on common counts for money had and received. There is some effort to plead coercion as having been exerted to secure this repayment. When the averment relied on to sustain the argument of coercion is examined, we are unable to fit it to any facts alleged that in law constitute coercion. There was no duress in the matter, in the sense that the law uses that term; in fact, we do not understand counsel to claim duress. His averment in the petition is, that defendant called upon and "compelled" plain-

tiff to refund to it the six thousand dollars. The claim of coercion rests alone on the word "compelled." Our court, following the general line of authority in cases of this kind, has said, in Buchanan v. Sahlein, 9 Mo. App. 552, l. c. 557, that an involuntary payment made under compulsion or legal process or duress of goods or of the person, may be recovered back, but in order to recover, the defendant must show not only that the demand was illegal but he must show duress. Considering what constitutes duress and involuntary payment, quoting from Wolff v. Marshall, 52 Mo. 171, it holds "that a payment of money upon an illegal and unjust demand, when the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property of the party from detention, or when the other party is armed with apparent authority to seize upon either and the payment is made to prevent it."

Considering the facts as stated in this case, they fall far short of showing any compelling force such as would constitute a payment under duress sufficient to sustain an action on that ground under the common counts as for the recovery of money had and received. Nor do they show payment by mistake of any material fact, or imposition, express or implied, extortion or undue advantage, on the presence of one or more of which the right to maintain an action to recover money had and received must rest. [Moses v. Macferlan, supra.]

We have not thought it necessary to take up and analyze at any length the authorities cited by the respective counsel. Those citations, as well as the points made, will doubtless appear in connection with the report of the case. We may say, summarizing, that we have reached our conclusions on the authority of the case of First National Bank of Chicago v. Northwestern National Bank of Chicago, supra, and the cases

above referred to by us, as also on the authority of Corn Exchange Bank v. Nassau Bank, 91 N. Y. 74.

Corn Exchange Bank v. Nassau Bank, supra, was a case where the facts and issues involved fit very closely into the case at bar. On November 9, 1874, a check drawn on plaintiff bank, whereon the endorsement of the payees had been forged, was deposited with defendant bank in the usual course of business. Defendant collected the check from plaintiff. In March, 1876, the forgery of the endorsement was discovered, and the drawer of the check sued plaintiff and recovered. Plaintiff then made demand on defendant, and brought suit for the amount of the check. Held: That defendant was liable for the amount of the check with simple interest from date of payment; that no duty rested upon plaintiff to examine and ascertain as to the genuineness of the endorsement before paying; and that it was not estopped by the delay. The New York Court of Appeals said: "The appellant contends that it was the plaintiff's duty to examine and ascertain the genuineness of the payee's endorsement before paying the check, and that in default of doing so, it is as against the defendant estopped from denying its genuineness; but the authorities are the other way. [Canal Bank v. Bank of Albany, 1 Hill 287; Whitney v. Nat. Bank of Potsdam, 45 N. Y. 303; Holt v. Ross, 54 id. 472, 13 Am. Rep. 615; The Union Nat. Bank of Troy v. Sixth Nat. Bank of N. Y., 43 N. Y. 452, 3 Am. Rep. 718; White v. Cont'l Nat. Bank, supra (64 N. Y. 316); Graves v. Am. Exch. Bank, 17 N. Y. 205.]"

Rossi v. National Bank of Commerce, another of the cases before cited, presents a case where plaintiff had endorsed for accommodation a check on which the payee's name had been forged, and defendant had then paid the check. Defendant had charged the drawee back with the amount of the check, and it had been paid. The drawee subsequently discovered the forgery

of the payee's endorsement, and collected the amount of the check from the defendant. Plaintiff was a depositor in defendant bank, and defendant charged plaintiff's account with the amount of the check by reason of his subsequent endorsement. The plaintiff sought to recover this amount from defendant. The plaintiff was non-suited, it being held that the defendant had a right to charge him with the amount of the check. This court said, disposing of a contention very like this one made at bar, that it was negligent for defendant to have given the draft to Hand: "Appellant also insists that the Mrs. May, who received the proceeds of the draft from the St. Louis bank, was guilty of obtaining money under false pretenses. That may be conceded, but inasmuch as she uttered a forged instrument to accomplish this purpose, it is not perceived how plaintiff is exonerated from his warranty of the genuineness of her endorsement because she was guilty of an additional offense."

The mistake of plaintiff in this case in paying over the money to defendant, if there was one, was not one of fact but of law. The payment was a voluntary payment, possibly induced by ignorance of the law, although we do not think that even this is so. In that aspect it falls under the decision of our Supreme Court in Hethcock v. Crawford County, 200 Mo. 170, 98 S. W. 582.

The judgment of the circuit court is affirmed. *Nortoni,* and *Caulfield, JJ.,* concur.