UNITED STATES v. JONES.

(District Court, D. Oregon.  March 31, 1916.)

No. 5606.

1. PUBLIC LANDS ⬤⟿123—DISPOSAL BY UNITED STATES—FINAL PROOF—FRAUD—MATERIALITY.

   Act Aug. 15, 1894, c. 290, § 15, 28 Stat. 326, providing for the disposition of certain ceded Indian lands, required actual residence thereon, and did not permit time spent in military service to be deducted, as permitted by Rev. St. §§ 2304, 2305 (Comp. St. 1913, §§ 4592, 4593), and Act Jan. 26, 1901, c. 180, 31 Stat. 740 (Comp. St. 1913, § 5014). An entryman made fraudulent misrepresentations in final proof of a homestead claim to such land, which proof showed that he claimed the right to deduct his time of military service. This deduction was allowed by the government through mistake of law. *Held*, that the misrepresentations were not as to a material fact, and did not authorize recovery of damages by the United States.

   [Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⬤⟿123.]

2. PUBLIC LANDS ⬤⟿123—DISPOSAL BY UNITED STATES—FINAL PROOF—FRAUD—MATERIALITY—ESTOPPEL.

   The rule that a party who has effected his purpose through a misrepresentation cannot deny its materiality does not affect the case, since

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

estoppel cannot go so far as to make material that which is absolutely not material, and so appears by the transaction and the law governing it.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⊚⟶123.]

3. PUBLIC LANDS ⊚⟶123—DISPOSAL BY UNITED STATES—REMEDY FOR FRAUD —QUESTION FOR JURY.

The question whether fraudulent representations, by which the entryman obtained patent to homestead, were material, is a question for the court, not the jury.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⊚⟶123.]

4. PUBLIC LANDS ⊚⟶123—DISPOSAL BY UNITED STATES—FINAL PROOF— FRAUD—MATERIALITY.

Fraudulent misrepresentations by a homestead entryman in making an application for commutation, which showed that he had not resided on the entry for the period required by Rev. St. § 2301 (Comp. St. 1913, § 4589), were not misrepresentations as to a material fact, and do not give the government the right to recover damages, though it allowed the commutation through a mistake of law.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⊚⟶123.]

5. PUBLIC LANDS ⊚⟶123—DAMAGES—MEASURE—DETERMINATION—DEMURRER TO ANSWER.

The question of the damages recoverable for fraud by homestead entryman will not be determined on demurrer to answer relating wholly to the measure of damages.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. ⊚⟶123.]

At Law. Action for damages by the United States against Willard N. Jones. On demurrers to special answers of the defendant. Demurrer sustained as to the second defense, and overruled as to the third.

See, also, 218 Fed. 973.

This is an action to recover damages, based upon fraud and deceit. By Act Aug. 15, 1894, c. 290, § 15, 28 Stat. 286, 326, provision was made for disposition of certain ceded lands, formerly a part of the Siletz reservation, in language following: "The mineral lands shall be disposed of under the laws applicable thereto, and the balance of the land so ceded shall be disposed of until further provided by law under the townsite law and under the provisions of the homestead law: Provided, however, that each settler, under and in accordance with the provisions of said homestead laws shall, at the time of making his original entry, pay the sum of fifty cents per acre in addition to the fees now required by law, and at the time of making final proof shall pay the further sum of one dollar per acre, final proof to be made within five years from the date of entry, and three years' actual residence on the land shall be established by such evidence as is now required in homestead proofs as a prerequisite to title or patent." Subsequently, by Act May 17, 1900, c. 479, 31 Stat. 179 (Comp. St. 1913, § 5013), the Congress provided in effect that, upon payment to the local land officers of the usual and customary fees, no other or further charge of any kind whatsoever should be required from such settler to entitle him to a patent to the lands covered by his entry. This was designed as an amendment of the act of August 15, 1894, and relieved the entryman from payment of $1.50 per acre as a prerequisite to obtaining his patent from the government.

In general, the complaint avers that the defendant, Jones, with the view of acquiring title in himself and persons associated with him to lands subject to disposition under the act of August 15, 1894, entered into fraudulent arrangements with certain persons, nine in number, whereby each of such persons should make application to homestead a certain tract of the lands subject to entry under said act, and that each should make fraudulent and false

proofs as to settlement, residence, improvements, cultivation, etc., at the time of making final proofs, so as to entitle him to patent; that said persons accordingly pretended to make settlement upon the lands selected as their homesteads, and offered and made homestead proofs, and submitted the same to the proper officers of the United States land office at Oregon City; "that in and by said homestead proof each of said entryman by himself and two witnesses falsely and fraudulently represented that he had, as required by law, established a residence upon and resided upon the land embraced in his said entry continuously after the alleged establishment of residence thereon until the time of said proofs, and had made substantial improvements thereon as set forth in said proof; that he had been only temporarily absent from said lands for a short time for the purpose of earning money to improve the same. And those entrymen having families each further falsely gave proof by himself and witnesses that his family resided on the claim in the absence of the entryman; that he had cultivated that portion of said lands specifically set out in his said proof, and that he had not conveyed any part of said lands and had not made any contract, directly or indirectly, whereby the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself; and that he was acting in good faith in perfecting the entry, when in truth and in fact, as each of said entrymen and his witnesses then and there well knew at the time of making said proofs, had not established a residence upon said lands, and had never resided thereon, and had no improvements thereon, and none of the said entrymen, as they and their witnesses well knew, had cultivated that part of his said entry set forth in his homestead proof, or any part thereof, for the time set forth in said proof, or at any time; but, if any part of any of said homestead entries was cultivated, the same was done by the defendant, Willard N. Jones, and all improvement made thereon was made by the defendant, Willard N. Jones, and not by any of said entrymen. And plaintiff alleges that none of said entrymen had acted in good faith, or was acting in good faith, in perfecting said entry, but was making the same upon speculation, and not for the purpose of making or securing for himself or his family a home; that in truth and in fact all of said entrymen, after the making of their respective entries as aforesaid, continued at all times during the life of their respective entries to reside at Portland, Or., except Benjamin S. Hunter, who resided at all said times at Dundee, Or., as aforesaid; that no improvements were made upon any of said lands during the life of said homestead entries, with the exception that the said defendant, Willard N. Jones, for the purpose of falsely and fraudulently making it appear that each of said entrymen resided upon his respective entry, had a house thereon built, a small, flimsy, uninhabitable shack upon the lands within each of said entries, shortly before said proofs were made. And the said Willard N. Jones, also in furtherance of said fraudulent and collusive purpose, caused a small tract upon each of said entries, in extent less than an acre, to be scratched over in order to give a semblance of a foundation for the statements of the entrymen and their witnesses that a portion of their respective entries had been cultivated." By further averment it appears that, relying upon the false and fraudulent representations thus made by the entrymen, the officers of the government were induced to issue final certificates to them, and eventually patents covering the lands comprised by the homesteads thus entered. The prayer is for damages in the sum of $133,000.

The defendant, for a second further and separate answer, has set up the statute of limitations of 6 years. For a third further and separate answer it is averred in effect that, as to eight of the entrymen, none of them, either by himself or by his final or homestead proof witnesses, or any witness produced by him, claimed, represented, or testified that he had resided upon said land by him entered for a period of 3 years, or for any other or greater period than as set out at length; the proofs showing that length of residence ranged from 13 to 20 months after entry, supplemented by proof of service in the Army or Navy of the United States for the remaining period of the 3 years. Thereupon it is alleged: "That the plaintiff and its agents and officers, in considering and passing on said final proofs, well knew that each of

said entrymen and his final proof witnesses had therein testified, stated, and claimed less than 2 years' actual residence on the part of such entryman, and neither the said plaintiff nor any of its agents or officers, in considering said final proofs, believed or understood, or had any reason to believe or understand, that any of said entrymen had represented or claimed to have resided upon said lands, or any thereof, for 3 years, but, on the contrary, the plaintiff and each and all of its agents and officers, by mistake of law, gave and allowed to each of said entrymen credit for military service as aforesaid, as a major part of the 3 years' actual residence required by law, and by reason of such mistake of law, and not otherwise, issued the final certificates and patents mentioned and referred to in the complaint." As to Wells, the remaining one of the nine entrymen, it is alleged that he commuted, but that his proofs show on their face that he was not an actual resident on his pretended homestead to exceed 10 weeks. And in this relation defendant further avers, in effect, that the plaintiff and its officers and agents, in considering said final proof, and in issuing the final certificate and patent referred to in the complaint to the said Wells, fully and well knew and understood that Wells had not resided upon said land to exceed 10 weeks, and, notwithstanding this knowledge and understanding, issued such certificate and patent to Wells. A fourth further and separate answer is interposed, which relates wholly to the measure of damages that should be applied, if recovery be had.

The plaintiff demurred to each of these three further and separate answers, on the ground that the facts stated are insufficient in law to constitute a defense.

Clarence L. Reames, U. S. Atty., and E. A. Johnson, Asst. U. S. Atty., both of Portland, Or.

Fulton & Bowerman and Schwartz & Saunders, all of Portland, Or., for defendant.

WOLVERTON, District Judge (after stating the facts as above). As to the second further and separate answer, the demurrer must be sustained, for the reason that the same question has been previously decided adversely to defendant in this cause. United States v. Jones (D. C.) 218 Fed. 973.

[1] The vital question presented by the third further and separate answer is whether a cause for deceit will lie where the alleged deceit practiced is concerning a matter not material to the subject of negotiation. The situation in brief is this: Under the general Homestead Act and other provisions of law having relation to specific territory or localities, and by virtue of sections 2304, 2305, R. S. (Comp. St. 1913, §§ 4592, 4593), and Act Jan. 26, 1901, c. 180, 31 Stat. 740 (Comp. St. 1913, § 5014), relating to the commutation of homestead entries in certain cases, honorably discharged soldiers who have made homestead entries are entitled to have the time of their military service deducted from the time of residence and cultivation required to entitle the homesteader to patent; one year's residence being required notwithstanding military service. To illustrate: The time of residence under the general homestead law being 5 years, if an honorably discharged soldier had performed military service for 3 years, he would be entitled to have the time of that service deducted from the 5 years, and would be entitled to patent after having resided upon his homestead for the period of 2 years. Now, this regulation was applied by the government as to eight of the persons alleged to have made false and fraudulent final proofs respecting their homesteads. The proofs were of residence of from 13 to 20 months, and of military service to supple-

ment the same to make out 3 years' residence on the land, as required by the act of August 15, 1894. The final receipts were all issued prior to the expiration of the 3 years subsequent to entry upon the lands.

Properly construed, the act of August 15, 1894, does not admit of any such application. This is conceded, and the Interior Department has so construed the act as applied to the Siletz Indian reservation lands. See letter of Assistant Commissioner to Register and Receiver, Oregon City, Or., of date July 2, 1902, In re Hattie C. Allebach, H. E. No. 12949. The act of August 15, 1894, as it applies to the Siletz reservation lands, requires that 3 years' actual residence on the land shall be established "by such evidence as is now required in homestead proofs" as a prerequisite to title or patent. This means actual residence for the term, not for a portion thereof supplemented by time of military or other service, and manifestly it should have been required of these eight homesteaders before final certificates were issued or patents granted to the lands comprised by their homesteads. In issuing the certificates and granting the patents, the Land Department acted under a clear mistake of law, and, even if it be conceded that the proofs submitted were true in every respect, and made in entire good faith, the entrymen were not entitled to title to the lands or to the patents.

Now, having gotten their patents on false proofs, which proofs, if true, would not have entitled them thereto, will the fraud and deceit thus practiced, if it may be so termed, afford grounds upon which the government may have relief in damages against the participants in the fraud? The proofs made were in no wise material to any inquiry pertinent to the establishment of the entrymen's right to their patents. They were wholly irrelevant to the inquiry that might properly have been made; that is, an inquiry with a view to ascertaining whether 3 years' actual residence had been made, with cultivation, improvements, etc., as required by the act of August 15, 1894. The general rule on the subject is tersely stated in American and English Enc. of Law, vol. 14, p. 59, as follows:

"To constitute fraud, a representation must be as to a material fact. With respect to this rule, there is no conflict of opinion, except sometimes in its application. A representation in relation to a fact that is not material to a contract, though it may be false and known to be false by the person making it, and though it may be acted upon by the other party, is not fraud, either for the purpose of an action of deceit, or for the purpose of rescinding the contract."

Then again, at page 62:

"It has been said that fraud is material to a contract, if the contract would probably not have been made if the fraud had not been practiced. This, however, is not always true. If a representation is not material, a person has no right to act upon it, and, if he does, he is not entitled to relief or redress on the ground of fraud. The question is not whether the person to whom the representation was made deemed it material, but whether it was in fact material."

The rule that the false representations must be of a fact material to the contract or inquiry has the approval of the United States Su--

preme Court. See Marshall v. Hubbard, 117 U. S. 415, 6 Sup. Ct. 806, 29 L. Ed. 919. The Circuit Court in that case instructed the jury, among other things, that:

"Not only must the representations be made, not only must they be fraudulent, and not only must it appear that the party relied, and had a right to rely, upon them, but it must also be shown that the representations were material to the contract or transaction which took place between the parties."

Then, after so instructing the court said:

"I think, therefore, that upon the proofs the case is within the rule laid down by the Supreme Court of the United States, namely: The court can now see, upon the evidence that bears upon the question of materiality of the representations, and alleged injury to the defendant, that if the jury were to render a verdict against the plaintiff it would have to set that verdict aside."

The court thereupon directed a verdict for the plaintiff, the fraud having been set up by the answer as a defense. On appeal to the Supreme Court, the action of the Circuit Court was affirmed, thus approving the holding of the Circuit Court. Other cases hold to the same principle, that the false representations must be of a fact material to the contract or transaction to constitute actionable deceit. Saxby and Wife v. Southern Land Co., 109 Va. 196, 63 S. E. 423; Hall v. Johnson, 41 Mich. 286, 2 N. W. 55. In the latter case the court says:

"False representations, no matter how acted upon, will not be sufficient to set aside an agreement otherwise valid, unless they were material."

See Missouri Lincoln Trust Company v. Third National Bank of St. Louis, 154 Mo. App. 89, 133 S. W. 357; Furneaux v. Webb, 33 Tex. Civ. App. 560, 77 S. W. 828; Anderson v. Adams, 43 Or. 621, 627, 74 Pac. 215.

The rule is further extended to comprise alleged false representations as to a fact of which the opposing party had knowledge, or which was patent to him, or of a fact upon which he had no right to rely. In either of such cases the action of deceit will not lie. Prince v. Overholser, 75 Wis. 646, 44 N. W. 775 (citing Slaughter's Adm'r v. Gerson, 13 Wall. 385, 20 L. Ed. 627); Robins v. Hope, 57 Cal. 493. No misrepresentation concerning the state of a party's own title to land can be treated as misleading to him. Russell v. Branham, 8 Blackf. (Ind.) 277. A party is not responsible for a misrepresentation of the legal effect of a contract. First National Bank of Elkhart v. Osborne et al., 18 Ind. App. 442, 48 N. E. 256.

Now, applying the doctrine as thus established by the authorities, it is perfectly manifest that the alleged false representations made by the proofs of the eight entrymen and their witnesses were wholly immaterial to the inquiry and to the transactions of the entrymen with the government; and not only this, the representations were of facts upon which the government had no right to rely. The government knew the law and was cognizant of the proper interpretation thereof, and, having such knowledge, it could not be deceived by proofs that had relation to acts that could not in any way be construed as a compliance therewith.

[2] The government seeks to meet this objection to the right of recovery by invoking the doctrine that a party who has effected his purpose through a misrepresentation cannot deny its materiality. Bigelow on Fraud, 497, citing also Fargo Gaslight & Coke Co. v. Fargo Gas & Electric Co., 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593, and note. But the law cannot make that material which is absolutely not material, and so appears by the very transaction itself and the law governing the case. The law of estoppel cannot go so far as to make false representations made in one transaction binding in another and a totally distinct transaction.

[3] It is further suggested that the matter of materiality is for the jury, and not for the court.

"Concerning the elements which go to make up a case of fraud, it is for the court and not for the jury to determine whether, e. g., an inducement held out by one party to another, which the latter professes to have acted upon, is material or not. * * * Generally speaking it is also for the court to interpret language of a perfectly plain nature, unaffected by external facts such as the particular circumstances in which it was used; when so modified, it is for the jury to declare its meaning. But when, as we have just said, the language is plain, and not subject to modification aliunde, the case is for the court; and this is true in principle, whether the language be written or oral. There is no question of the truth of this proposition when applied to written language; and there ought to be none in regard to oral statement, for no sound distinction can be drawn between the two cases." Bigelow on Fraud, p. 139.

This quotation from Bigelow answers the objection. As it relates to the eight entrymen, I am impelled to the conclusion that the answer states a good defense.

[4] The case of Wells presents the question in a different aspect. Wells made application October 1, 1900, and commuted May 26, 1902. Under the statute (section 2301, R. S. [Comp. St. 1913, § 4589]) Wells was entitled to commute, if so entitled at all, upon making proof of settlement and of residence and cultivation for a period of 14 months. The act of August 15, 1894, requires actual residence. Adams v. Coates, 38 Land Dec. Dept. Int. 179. Wells by his own testimony shows that he had not actually resided on his homestead anywhere near 14 months. He was asked, "How much time since entry have you actually lived upon the land?" to which he answered, "Between the time of entry, viz., October 1, 1900, and the present time I have been there five times, remaining there each time from one to two weeks."

The government knew from this testimony that Wells had not complied with the law. Notwithstanding, it issued to him the final receipt and later the patent. Being fully aware of the situation, the government could not have been deceived by the proofs made. Even if true, the proofs did not entitle Wells to his final receipt or patent. So that, in either aspect, the government could not have been defrauded of the land. If it be argued that the government relied upon the proofs, the natural and pertinent answer is that, knowing the law and the requirements of Congress in such a case, it had no right to rely upon them, whether true or false, to the extent of approving the claim and issuing final receipt and patent. Such being the situation, the government is not entitled to an action in deceit.

The demurrer will be sustained as to the second further and separate defense, and overruled as to the third.

[5] As to the fourth, I am still of the opinion that this is not the time to pass upon the question involved.

Judgment accordingly.