COMMERCIAL CREDIT CORPORATION, a corporation, Plaintiff,

v.

EMPIRE TRUST COMPANY, a corporation, Defendant.

No. 907.

United States District Court
W. D. Missouri,
St. Joseph Division.

Nov. 19, 1957.

Byron E. Mintoyne, Kansas City, Mo., for plaintiff.

Langworthy, Matz & Linde, Billy S. Sparks, Kansas City, Mo., Morton & Morton, David H. Morton, St. Joseph, Mo., for defendant.

DUNCAN, Chief Judge.

Plaintiff, a corporation, organized under the laws of the State of Maryland, instituted this suit in this court as a depositor, against the defendant, a resident of Missouri, to require the defendant to restore to the plaintiff's account, the sum of $10,131.16, alleging that the plaintiff drew its check No. 5772 on the defendant bank in the sum of $12,000, payable to the order of Howard A. Beach and Mary L. Beach of Atchison, Kansas, and that—

> "Thereafter, the defendant wrongfully paid said check without the indorsement of the said Mary L. Beach and wrongfully paid said sum on said check to persons not entitled thereto and wrongfully charged plaintiff's said account therewith."

The material facts are not in dispute. Although some testimony was introduced at the hearing of the case, the essential facts are contained in the complaint and the answer.

The undisputed facts are that Howard A. Beach applied for a loan from the plaintiff to be used as capital in the conduct of an automobile agency he was to acquire in Atchison, Kansas. Pursuant to negotiations between Howard A. Beach and a representative of plaintiff, the plaintiff agreed to lend to the said Howard A. Beach, the sum of $12,000, if he obtained a franchise for a Dodge agency.

A financial statement was made by Howard A. Beach on November 2, 1954, while the loan was being discussed by

the field representative of the plaintiff, in which he stated that he had $190 cash on hand, cash in the bank of $1,000, and $15,000 in bonds. The bonds were to be converted into cash, and added to the amount to be borrowed, and all was to be used as working capital of the new business. He acquired the agency and its assets, and a bill of sale from the owner in December, 1954, made solely to Howard A. Beach. In accordance with the loan agreement, the bill of sale was delivered to the plaintiff. The loan was evidenced by a written agreement entered into December 20, 1954—

"* * * by and between Howard

A. Beach, individually and doing business as an automobile dealer under the name and style of Howard Motors at Atchinson, Kansas, herein called 'Dealer', and Mary L. Beach, his wife, of Leavenworth, Kansas, herein called, 'Co-maker', Dealer and Co-maker being herein sometimes referred to, jointly and severally, as 'First Parties', and Commercial Credit Corporation, herein called 'Commercial Credit', a Maryland corporation with an office at St. Joseph, Missouri,"

The first paragraph of the contract[1] provides:

1. "This Agreement, made this 20 day of December, 1954, by and between Howard A. Beach, individually and doing business as an automobile dealer under the name and style of Howard Motors at Atchinson, Kansas, herein called 'Dealer', and Mary L. Beach, his wife, of Leavensworth, Kansas, herein called 'Co-maker', Dealer and Co-maker being herein sometimes referred to, jointly and severally, as 'First Parties', and Commercial Credit Corporation, herein called 'Commercial Credit', a Maryland corporation with an office at St. Joseph, Missouri,

"Witnesseth:

"1. Concurrently with the execution hereof, Commercial Credit has lent Dealer and Dealer acknowledges the receipt of Twelve Thousand Dollars ($12,000.00). Said loan is evidenced by the demand promissory note of First Parties of even date.

"2. Without said note so providing, First Parties promise to pay to Commercial Credit on account of the principal thereof, on the fifteenth day of each month, beginning with the fifteenth day of February, 1955 HAB at least the larger of (a) Twenty-five Dollars ($25.00) for each new automobile or truck sold at retail, based upon sales made by Dealer during the immediately preceding calendar month, whether such sales were for cash, credit, or on terms of deferred payment, or (b) Three Hundred Thirty-three Dollars and Thirty-three cents ($333.33) per month. Said loan will be paid in full, in cash, in not more than thirty-five (35) months from the date next above.

"3. Notwithstanding any other provisions hereof, First Parties may anticipate and prepay said loan in whole or in part, at any time, and Commercial Credit may demand payment of said promissory note in accordance with its terms at any time.

"4. As security for the payment of said loan,

"(a) First Parties will procure and maintain in full force and effect non-assessable policies of insurance on the life of Howard A. Beach in the amount of at least Twelve Thousand Dollars ($12,000.00). First Parties will pay the premiums on said policies annually in advance. Said policies shall be assigned to Commercial Credit by absolute assignments satisfactory to it, and shall be delivered to Commercial Credit concurrently with the execution hereof.

"(b) First Parties will cause Dealer to execute and deliver, concurrently with the execution hereof, a valid 'and subsisting first chattel mortgage in favor of Commercial Credit, satisfactory to it, covering such personal property of Dealer as is described therein.

"5. So long as any portion of said loan is outstanding and unpaid,

"(a) Dealer will offer first to Commercial Credit for purchase all conditional sale contracts, chattel mortgages, lease agreements, promissory notes and other time sale obligations (all herein called 'Instruments') arising from sales of new and used automobiles and trucks by Dealer. Instruments which are acceptable to Commercial Credit shall be purchased by it in accordance with its plans now in effect, or such plans as it may make effective from time to time hereafter in the territory in which Dealer operates.

"(b) All Dealer Reserves set up by Commercial Credit for the account of

"1. Concurrently with the execution hereof, Commercial Credit has lent Dealer and Dealer acknowledges the receipt of Twelve Thousand Dollars ($12,000.00). Said loan is evidenced by the demand promissory note of First Parties of even date."

On the same day (Dec. 20, 1954) that this agreement and promissory note in the sum of $12,000 bearing the signatures "Howard A. Beach"—"Mary L. Beach" were executed, a chattel mortgage executed by Howard A. Beach, doing business as Howard Motors of Atchison, Kansas, was executed, describing various articles and equipment attached thereto, to secure the payment of said promissory note. This chattel mortgage was signed "Howard Motors by Howard A. Beach", duly acknowledged by him and recorded in the office of the Recorder of Deeds of Atchison County, Kansas.

Immediately after the delivery of the contract, the promissory note and the chattel mortgage, the plaintiff delivered to the said Howard A. Beach, its check drawn on the defendant bank in the sum of $12,000 made payable to the order of "Howard A. Beach and Mary L. Beach Atchison, Kansas," signed—

"Commercial Credit Corporation

"M. E. Stoos
  "Authorized Signature

"D. S. Paddleford
  "Authorized Signature"

On the back of the check appears the words, "Pay to the order of Howard Motor Howard A. Beach Mary L. Beach" and endorsed by rubber stamp, "Howard Motors". It was deposited to the credit of Howard Motors' account in the Exchange National Bank of Atchison, Kansas, and bears the following stamped endorsement of said bank, "All prior endorsements guaranteed". The check then cleared through the First National Bank of St. Joseph, Missouri, and was charged to the account of plaintiff by the defendant.

At the time Beach deposited the $12,000, proceeds of the loan, he also deposited to the account of Howard Motors, $4,288.44, making a total of $16,288.44. There is no evidence that the bonds were

Dealer shall be retained by Commercial Credit, except that such amount of said reserves as is in excess of Three Per Cent. (3%) of the balance outstanding on Instruments purchased by Commercial Credit may be, when payable, either applied on said promissory note or paid to Dealer, at Dealer's election.

"(c) First Parties will not borrow any money from the business of Dealer, and their total withdrawals from the business of Dealer, as a distribution of profits, remuneration for services and otherwise, shall not exceed the aggregate sum of Four Hundred Fifty Dollars ($450.00) per month, without the prior written consent of Commercial Credit.

"(d) Dealer will furnish to Commercial Credit each month a financial statement, report of operations and such other information as Commercial Credit may request from time to time.

"(e) Dealer will furnish to Commercial Credit on or before the twentieth day of each month a written report of all new and used automobiles and trucks sold by Dealer during the immediately preceding calendar month.

"In Witness Whereof, the parties hereto have duly executed this agreement the day and year first above written.

"/s/ Lafe Ingram
  "Witness

"/s/ B. L. Thompson
  "Witness

"Attest:  (Seal)

"/s/ C. H. Brown
  "Secretary

/s/ Howard A. Beach  (Seal)
  Howard A. Beach

/s/ Mary L. Beach  (Seal)
  Mary L. Beach

Commercial Credit Corporation

/s/ By E. L. Chesney
  JBM Senior Vice President"

converted to cash and became a part of the working capital, as agreed.

The signatures of Mary L. Beach on the contract, the promissory note and on the back of the check endorsing it to Howard Motors, were forgeries. The business of the Howard Motors was apparently unsuccessful from the beginning, and in March of 1955, the plaintiff foreclosed under its chattel mortgage, realizing less than $2,000.

Plaintiff then instituted suit in the Circuit Court of Atchison County, Kansas, against Howard A. Beach and Mary L. Beach, in which it sought to recover the sum of $11,500, alleging that the benefits of the loan accrued to the defendants jointly and severally; "that plaintiff made said loan to defendants contrary to the contingencies and specifications hereinbefore mentioned solely and only because of said false and fraudulent representations and the execution of said note by said defendants and each of them as aforesaid and its reliance thereon." It was not until after this suit had been brought, almost two years after the loan had been made, that plaintiff learned that the name "Mary L. Beach" had been forged to the documents heretofore described. It then brought this action against this defendant.

The negotiations for the loan were conducted by Lafe Ingram, who was the field representative of the plaintiff. None of the officers of the corporation ever discussed the loan with Beach, nor was the question ever discussed at all with Mrs. Beach. The contract, note and chattel mortgage were prepared by plaintiff and delivered by Ingram to Howard A. Beach. The signature of Howard A. Beach was placed on the contract and the note in the presence of Lafe Ingram and witnessed by him, as shown by these documents, and then left with Howard A. Beach with the understanding that he would obtain the signature of his wife and return the documents to Ingram. The name of Mary L. Beach was not placed upon any of the documents in the presence of Ingram.

The next day when the documents were delivered by Beach to Ingram for his company, they bore the signature "Mary L. Beach" witnessed by "B. L. Thompson" (the evidence does not reveal who "B. L. Thompson" was), and in return, a check was delivered to Beach. The documents were then delivered by Ingram to his company, where they remained until the foreclosure was started in March, 1955.

The defendant admits in its answer that at the time the check was drawn, it had on deposit in a checking account, subject to check by plaintiff, an amount equal to $12,000, the amount of the check in controversy. It contends that if any loss, injury or damage was sustained by plaintiff, it was occasioned by plaintiff's own acts, and not by any act or omission of defendant; that plaintiff knew, or should have known, in the exercise of due or ordinary care, that said note was not signed by Mary L. Beach; that the loss, if any, was directly caused by the fact that Mary L. Beach did not sign said promissory note, and by the fact that plaintiff did not exercise due care in seeing that said promissory note was signed by Mary L. Beach, wife of Howard A. Beach.

Further, that the check was payable to "person or persons who actually executed said promissory note and that the person or persons who executed said promissory note endorsed said check, and that said check was properly endorsed and paid to said person or persons who actually executed said promissory note." Further, "that plaintiff is estopped to make any claim against defendant by reason of the fact that plaintiff knew or in the exercise of due care should have known that the Mary L. Beach, wife of Howard A. Beach, did not endorse said check, in time thereafter to have notified defendant and defendant's prior endorsers when at said time defendant and its prior endorsers could have in due course recouped any loss sustained from Howard A. Beach and from Howard Motors, the original endorser on said check."

Defendant also contends that under section 401.201 RSMo 1949, V.A.M.S., plaintiff was barred from maintaining this action, but now concedes that the above statute applies only to a "forged or raised check", and not to a forged endorsement of a check bearing the true name of a person whose signature is forged as an endorser.

Plaintiff relies upon the general rule of law in Missouri that a bank may not charge to the account of a depositor, a check upon which the endorsement of the payee has been forged, and that if it does so, then the depositor may compel restitution, "unless the bank has been misled by some negligence or other fault of the depositor, which will estop him from questioning the validity of the charge made against his account." Borserine v. Maryland Casualty Company, 8 Cir., 112 F.2d 409, 415; American Sash & Door Co. v. Commerce Trust Company, 332 Mo. 98, 56 S.W.2d 1034, 1038.

The opinion in the American Sash & Door Co., case was written by the late Judge Ellison, in which he reviewed all of the decisions upon the subject, and many of the questions which have been raised by the defendant here as a defense, it seems to me, are settled adversely to it in that decision. However, the facts are substantially different, and there are additional questions which must be considered in deciding the present case.

In the American Sash & Door Co., case, an employee padded the payroll by drawing checks to fictitious persons, or to persons who were not then upon the payroll of the company, and he then signed the names of the payees, as well as his own to such checks. The fraud was not learned for a considerable period of time, and when the facts were brought to light, an action was commenced against the bank to recover the amount of the checks, because the signatures were forged. The court (two judges dissenting) held the bank to be liable.

In the Borserine case, supra, an employee of the bank's depositor was charged with the duty of providing checks in payment of the purchase price of grain for his employer. He conceived the fraudulent scheme of obtaining from the cashier of the company, checks made payable to persons who had not sold grain to his employer. He thereafter signed the names of the payees, and also his own name, and cashed the checks at a drugstore operated by Borserine. The checks were duly paid by the bank, and the bank was called upon by the drawer of the checks for restitution. The bonding company as subrogee, sued Borserine, guarantor of all prior endorsements, and he was held to be liable.

Defendant insists that plaintiff was negligent in not definitely ascertaining that Mary L. Beach had signed the contract and note, and is therefore, estopped from charging defendant with wrongdoing in cashing the check without Mrs. Beach's genuine signature endorsed thereon.

Plaintiff's business representative may not have followed good business practice in leaving the contract and note with Howard A. Beach for the purpose of obtaining his wife's signature thereto, yet, such act was not of such character as to bring it within the exception of the general rule heretofore expressed in American Sash & Door Company v. Commerce Trust Co., supra. Dealing with the question of negligence, that court said [332 Mo. 98, 56 S.W.2d 1038]:

"Considering first the defense that the plaintiff was negligent in the *issuance.* of the checks. By the overwhelming weight of authority the negligence of a depositor which will relieve the drawee bank from cashing on a forged indorsement his check delivered to one person, but made payable to the order of another, must be such as relates to the forgery or its detection and the payment of the check, not to the mere mistaken issuance thereof. The relation between the bank and the depositor is that of debtor and creditor. The bank's duty to make charges against the depositor's account only on his authentic order and genuine

indorsements is absolute—contractual. It is not simply a question of using due care and of offsetting negligence against contributory negligence. To be available as a defense the negligence of the depositor must be of such nature as to interfere with the bank's performance of its contract, and in effect amount to a representation operating as an estoppel."

In that case, the court further quoted with approval what was said in Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 407, 408, 87 N.E. 740, 743, 22 L.R.A.,N.S., 250:

"a leading case on the question, is that the 'negligence of the maker is immaterial unless it is of a kind that directly and proximately affects the conduct of the banker in the performance of his duties'; and, further, 'it seems plain that only negligence which is a direct and proximate cause of the payment can be effectual in making such a defense.'"

Also the statement in East St. Louis Cotton Oil Co. v. Bank of Steele, 200 Mo. App. 180, 188, 205 S.W. 96, 99:

"The negligence of the defendant (plaintiff) should have some connection with the forgery or the act of the bank in paying the check. In other words, the negligence of the customer or drawer should be the proximate cause of the forgery or payment, and not the mere possible cause of the forger getting possession of the blank check. * * * Where the customer is directly connected with the forgeries, or his negligence is directly connected therewith, he cannot recover."

■ Nothing in the admissions or in the evidence reveals any conduct on the part of the plaintiff that "connected it with the forgery or the act of the bank in paying the check". The practice of depending upon one party to a contract to obtain the signature of the other party is not unusual. There is nothing in the record indicating any lack of good faith on the part of Beach during the negotiations for the loan; nothing had occurred which would lead Ingram to believe Beach would have his wife's signature forged to the note and mortgage. Beach was obtaining a substantial loan, and it might have been presumed by Ingram that he could at least be relied upon to honestly execute the loan agreements. Certainly, in relying upon him to do so, Ingram was not guilty of such negligence as to be the proximate cause of the forgery or the payment of the check, as defined in the above case.

■ Defendant cites section 401.009 RSMo 1949, V.A.M.S., and insists that that part of the section which says: " * * * or to a living person not intended or entitled to have any interest in it and such fact was known to the person making it so payable * * * " renders the check one payable to bearer, and under the facts, defeats plaintiff's recovery. Again I must disagree with defendant.

Had Mary L. Beach signed the contract, she would have become responsible for carrying out the terms of the loan agreement, and, also, a co-maker of the note. It must, therefore, be assumed that if she was to be responsible for the payment of the note, she would legally be interested in the proceeds of the check issued for the amount of the note, which, under the terms of the agreement, she was to sign.

■ The next defense relied upon by the defendant is that the proceeds of the loan which was procured upon the presentation of the check, went to the very person to whom it was intended to go, and was used for the purpose for which the loan was made. Moreover, such loss as plaintiff sustained, so far as Mary L. Beach was concerned, was not caused by its paying the check without her true signature, but because of the forgery of her name to the contract, wherein she agreed to become responsible for the payment of the loan, and the forgery of her name to the note in which she was to be a co-maker. Although denying liabili-

ty for any loss, defendant admits that plaintiff's loss was $10,131.16.

Had the bank discovered the forged endorsement on the check and refused to pay it, probably the plaintiff would have discovered the initial fraud in the forgery of her name to the contract which established her liability, and the note on which she was a co-maker and was to become responsible for its payment, but, under the circumstances, I think there could be no greater responsibility upon the bank to detect the forgery of the name of Mary L. Beach, than there was upon the plaintiff to detect the forgery of her signature upon its basic documents in which the liability of the parties for the repayment of the loan was to be assumed.

It must be conceded that the proceeds of the check did go to the person to whom the loan was made, and used in the conduct of the business or agency, although likely not the specific purpose for which it was intended. So far as the evidence reveals, it was never intended that Mrs. Beach was to have any part of the loan, or any connection with the business.

The facts with which we are dealing here are quite different from those cases where payroll checks are forged, or where forgeries are resorted to for the purpose of fraudulently obtaining money. Even if Mrs. Beach had signed the check, the proceeds would have gone to exactly the same person and been used for exactly the same purpose, and the plaintiff would still have been faced with the question of a forged contract and note in its attempt to force liability against Mrs. Beach. No Missouri cases have been cited or found in which the courts dealt with a comparable factual situation.

That brings us to the question of what caused plaintiff's loss, so far as Mrs. Beach's liability is concerned. We must bear in mind that she was not a partner in the business, and had nothing to do with its operation. The Dodge franchise was obtained in the name of Beach, and the agency was operated under the firm name "Howard Motors"; Beach alone executed the chattel mortgage. So far as Mrs. Beach's liability was concerned in the negotiations for the loan, it was to be measured by the terms of the contract to be signed by her, and as co-maker of the note. It was to these documents, and to them alone, that plaintiff could base its right to recover against her. She neither received, nor was supposed to receive any part of the money.

The conclusion is inescapable that plaintiff's inability to impose legal liability upon Mrs. Beach resulted from forgery of her signature to the documents in which her purported and intended liability was fixed. While no Missouri cases have dealt with this problem, almost exactly the same state of facts was before the court in Provident Savings Bank & T. Co. v. Fifth-Third Union T. Co., 43 Ohio App. 533, 183 N.E. 885, 886. In that case, the Ritz American Ice Cream Company drew a check upon the Fifth-Third Union Trust Company payable to James and Susie Eatrides and it was sent to James Eatrides (as was done here). The check was paid by the Provident Savings Bank and Trust, stamped with its name as an endorser and transmitted through the clearing house to the Fifth-Third Union Trust Company, which bank paid it and charged it to the account of the Ritz American Ice Cream Co. The check was sent to James Eatrides as consideration for a note and chattel mortgage which the Ice Cream Company obtained from Eatrides. The note and mortgage bore the signature of James and Susie Eatrides, and the check when presented to the bank, bore their signatures as endorsers. Two years after the payment of the check by the bank, the note being unpaid, suit was brought against the makers, and Susie Eatrides alleged that her signature on the note and mortgage was a forgery, and that she had not endorsed the check. Thus far the facts are identical with the present case.

Immediately upon being notified of the forgery, the Fifth-Third Union Trust Company credited the account of the Ice Cream Company with the amount of the

check and demanded payment from the prior endorser under its guarantee. Payment was refused. In holding that the prior endorser was not liable, the court stated:

"What loss has the drawee bank, the Fifth-Third Union Trust Company, suffered in the instant case? It claims to have credited its depositor with the amount of the check. It can only assert such payment as a loss if it was legally forced to make good a loss to the depositor.

"What loss then did the Ritz American Ice Cream Company, the depositor, suffer by reason of the forged indorsement upon the check? None. Its loss is due to the forgery upon a note and mortgage, which prevents it from collecting from the party whose name it is claimed was forged. The loss on the note and mortgage would have been the same as it would have been had the check not been indorsed by forgery."

That court further stated:

"We are not concerned with the loss of the Ice Cream Company through its own negligence in accepting a forged note and mortgage; or that it cannot now collect upon such note and mortgage against the responsible maker whose name was forged. What we are concerned with is the loss to the Ice Cream Company by reason of the forged indorsement upon the check, and, exclusive of the note and mortgage, putting them out of consideration, we cannot see where the Ice Cream Company has suffered any loss whatever by reason of the forged indorsement upon the check."

That is the situation here. Plaintiff's loss resulted from the forged endorsement upon the contract and note, and not because of the cashing of the check, the proceeds of which went to the very person for whom the loan was intended. For that reason, it is my conclusion that the plaintiff is not entitled to recover.

Judgment entry in accordance herewith, may be submitted within ten days.